IN THE MATTER OF: THE APPEAL OF FORSYTH COUNTY, NORTH CAROLINA FROM AN ACTION AND FINAL DECISION OF THE STATE BOARD OF ASSESSMENT RELATING TO THE 1972 AD VALOREM TAXES ON CERTAIN TOBACCO INVENTORY OF R. J. REYNOLDS TOBACCO COMPANY

No. 13

(Filed 13 March 1974)

1. Statutes § 5— construction — consideration of caption

   Where the meaning of a statute is doubtful, its title may be called in aid of construction, but the caption will not be permitted to control when the meaning of the text is clear.

In re Forsyth County

2. **Taxation § 25— ad valorem taxes — tobacco in processing area**
　　Tobacco belonging to a manufacturer of tobacco products which has been removed from the manufacturer's storage facilities and transferred to the processing area is still an agricultural product coming within the classification provided by G.S. 105-277(a) and is therefore subject to ad valorem taxation at only 60% of the rate applicable to other property in the local taxing unit.

　　Justices SHARP and LAKE did not participate in the consideration or decision of this case.

THIS proceeding originated by petition of the R. J. Reynolds Tobacco Company addressed to the Forsyth County Tax Supervisor requesting that tobacco, which is the subject of this controversy, be taxed at 60% of the tax rate applicable to other species of property as provided by G.S. 105-277(a) (1971). The record recites: "The property involved in this appeal consists of leaf tobacco belonging to the [original] appellant which has been removed from the firm's storage facilities and transferred to their processing area for the purpose of being processed and manufactured into cigarettes and other tobacco products." The Tax Supervisor denied the request and demanded that the taxpayer pay at the full tax rate. The taxpayer appealed to the County Board of Equalization and Review which affirmed the decision of the Tax Supervisor. The taxpayer appealed to the State Board of Assessment which heard evidence, oral arguments, and considered written briefs.

The evidence before the State Board consisted of the testimony of a single witness, Mr. Carroll Thompson, a research chemist holding a degree of Bachelor of Science from William Jewell College and a Master's Degree from the Massachusetts Institute of Technology. He testified that he had been employed by R. J. Reynolds Tobacco Company for more than twenty years. During his employment he had filled every supervisory job in the manufacturing department of his company. He is now superintendent of production.

　　" . . . My job specification calls for total responsibilities in scheduling our production in our factories on all tobacco products. This includes not only personnel and materials but the tobacco as well . . . .

　　　　. . . .

　　"Processing of the tobacco really begins when the farmer takes the tobacco out of the field and puts it into

a curing barn. In the case of flue-cured tobacco which is grown in Florida, Georgia, South Carolina, North Carolina, and Virginia, this is heated artificially to induce the cure. In the case of burley tobacco which is grown in western North Carolina, Kentucky, and Tennessee, this is an air curing process where the tobacco is allowed to wilt in the field and then air dried in slatted barns under cover. The farmer then takes his tobacco to an auction market and [it] is sold to representatives of the various tobacco companies.

"They, in turn, take that product from the auction market to either a prize house or directly to a steaming operation where the mid-stem is removed. The moisture is adjusted and the resulting strips of tobacco, exclusive of the stems, are stored in hogsheads. The hogsheads go into the storage shed for a period of at least one year where significant changes take place in the product during aging. This is a necessary part of the aging of the product in order to qualify for the uses in manufacturing operation.

"After approximately a year and a half or thereabouts, the tobacco is taken out of the storage shed and sent to a processing and cleaning room where the hogshead materials are removed from the tobacco. Moisture is re-adjusted so that it's raised and the leaf is pliable and will not shatter in subsequent processing.

"It is run through a series of tumbling drums with screens to remove foreign material and sand that might be left on the leaf product.

"The various many different grades that constitute the type of tobacco crop are then blended to give an homogeneous mixture of product. And the product is delivered to another department which we would call the blending operation. . . . [I]t is delivered by a conveyor to another area where the tobacco is further processed in relationship to its moisture content. It has to be very critically adjusted.

"Certain flavoring ingredients are added at that point. The tobacco goes into storage for equilibration purposes of at least forty-eight hours. After it is removed from the storage area, it's delivered to yet another department where additional humectants are added. The finished products are

In re Forsyth County

sprayed and the moisture is then adjusted to a higher moisture level to prevent shattering and breaking in the shredding and cutting operation.

"The tobacco goes to a cutting machine which reduces the size of the leaf . . . to the narrow strands that we customarily think of in cigarette tobacco. The tobacco is then run through a drying operation to reduce the moisure from this higher level down to a desired level and it goes down to storage for a minimum of forty-eight hours.

"After it is removed from that [final] storage process, it goes into the making and packing department. It is fed pneumatically or manually to the hopper of the cigarette making machine."

The machine rolls the cigarettes, seals them in packages, and applies the Internal Revenue stamps, completing the manufacturing process.

The State Board of Assessment, sitting as the State Board of Equalization and Review, made these findings:

"(1) That R. J. Reynonds Tobacco Company is a manufacturer of tobacco products.

"(2) That tobacco is an agricultural product which requires a period of more than one year's storage and processing in order to age or condition the product for manufacturing.

"(3) That the tobacco under appeal has been held in storage by R. J. Reynolds Tobacco Company for at least one year as of January 1, 1972.

"(4) That as of January 1, 1972, the subject tobacco had been removed from the firm's storage facilities, transferred to the processing area and removed from the hogsheads in which it had been stored.

"(5) That as of January 1, 1972, the tobacco in question was at some stage in the manufacturing process between storage and the final step in which the tobacco is manufactured into cigarettes."

The Board concluded:

"From our review of the applicable law, the evidence and our findings of fact, we conclude and so decide that

the subject property comes within the classification provided by G.S. 105-277(a). The tobacco was owned by a manufacturer of tobacco products; it required storage for more than one year for aging and conditioning for manufacture. It was therefore subject to tax at 60% of the rate applicable to other property in the county." This order followed:

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the action of the Forsyth County Board of Equalization and Review in assessing the subject property at the full tax value rather than the 60% rate was in error and is hereby reversed."

The County of Forsyth filed a petition in the superior court for judicial review alleging error in the findings and conclusions and the order of the State Board of Assessment.

After hearing, Judge Wood in the superior court, entered this order:

"THIS CAUSE coming on to be heard and being heard before the undersigned Presiding Judge of the Superior Court of Forsyth County, North Carolina, at the July 30, 1973 Session of the Superior Court of Forsyth County, upon the petition of Forsyth County for judicial review of the Final Decision of the State Board of Assessment in the above-styled matter; and the Court having reviewed the record of the State Board of Assessment and having considered the briefs submitted by the parties, and having heard oral arguments of the parties, and the Court being of the opinion that the findings of fact and conclusions of law of the State Board of Assessment should be affirmed, the Court finding that the findings of fact of the State Board of Assessment are supported by the evidence and that the property which is the subject of this proceeding was located at the premises of R. J. Reynolds Tobacco Company in Forsyth County, North Carolina on January 1, 1972 while the plant facilities were closed for the holidays and while it was awaiting conversion into a manufactured product, and the Court being of the further opinion that the conclusions of law of the State Board of Assessment are in accordance with law and supported by the findings of fact of the State Board of Assessment;

"Now, THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED that the property which is the subject of this

proceeding is entitled to the classification set forth in § 105-277(a) of the General Statutes and is, therefore, entitled to be taxed at sixty percent (60%) of the rate levied on real estate and other tangible personal property by the City of Winston-Salem, and the County of Forsyth on January 1, 1972. The final decision of the State Board of Assessment is therefore affirmed in all respects.

"It is further ORDERED that the costs of this action shall be taxed against Forsyth County.

"This 2nd day of August, 1973.

WILLIAM Z. WOOD
Presiding Judge of Superior Court."

Forsyth County excepted to the judgment, alleging three errors in the findings and conclusion: (1) That the property was awaiting conversion into a manufactured product on January 1, 1972; (2) the finding and conclusion that the subject property is entitled to the classification set forth in G.S. 105-277(a) and therefore entitled to be taxed at sixty percent (60%) of the tax rate on January 1, 1972; (3) that the subject property was not in storage as of January 1, 1972, and was no longer an agricultural product within the meaning of the statute. Forsyth County gave notice of appeal.

Both parties joined in a petition that this proceeding be certified to the Supreme Court for review prior to determination in the North Carolina Court of Appeals. The petition was allowed on December 4, 1973.

*P. Eugene Price, Jr., and Chester C. Davis for appellant.*

*Hudson, Petree, Stockton, Stockton and Robinson by William F. Maready for appellee.*

HIGGINS, Justice.

The parties agree that the resolution of this controversy depends upon the interpretation of G.S. 105-277(a) (1971). The act provides: "Agricultural Products in Storage. Any agricultural product held in North Carolina by any manufacturer or processor for manufacturing or processing, which agricultural product is of such nature as customarily to require storage and processing for periods of more than one year in order to age or condition such product for manufacture, is hereby classified

as a special class of property under authority of § 2(2), Article V of the Constitution." The parties conceded that tobacco qualifies as an agricultural product and it is of such character as requires storage and processing for periods of more than one year; and that R. J. Reynolds Tobacco Company is a manufacturer and processor. The County has contended that the tobacco loses its preferred character for tax purposes when it is removed from the shed where the hogsheads were stored during the early part of the aging process. The taxpayer contends it retains its preferred status during the time it is *held in North Carolina by a manufacturer or processor for manufacturing or processing.*

In Chapter 806, Session Laws of 1971, the General Assembly rewrote the North Carolina Machinery Act of 1971. § 105-277 is here quoted in material part:

> *"Property classified for taxation at reduced rate.—* (a) Agricultural Products in Storage. Any agricultural product held in North Carolina by any manufacturer or processor for manufacturing or processing, which agricultural product is of such nature as customarily to require storage and processing for periods of more than one year in order to age or condition such product for manufacture, is hereby classified as a special class of property under authority of § 2(2), Article V of the Constitution. Such agricultural products so classified shall be taxed uniformly as a class in each local taxing unit at sixty per cent (60%) of the rate levied for all purposes upon real estate and other tangible personal property by said taxing unit in which such agricultural product is listed for taxation."

The taxing authorities for Forsyth County contend that subtitle "(a) Agricultural Products in Storage" controls and that the tobacco becomes taxable at the moment it leaves the latticed shed where the hogsheads had been stored. Such is not the meaning of the body of subsection (a). The subsection covers "Any agricultural product *held* in North Carolina by any manufacturer or processor *for manufacturing or processing*" (emphasis added) provided the product is of the nature as to require storage in order to assist in the aging and conditioning for its ultimate use.

Assuming the headnote "(a) Agricultural Products in Storage" was inserted by the General Assembly and not by a com-

piler, nevertheless the body of the statute provides that the product be *held* for manufacturing and processing.

[1]   The law is clear that captions of a statute cannot control when the text is clear. *In re Chisholm's Will,* 176 N.C. 211, 96 S.E. 1031. Especially is this true if the headnote is the work of a compiler. In *Dunn v. Dunn,* 199 N.C. 535, 155 S.E. 165, Chief Justice Stacy stated the rule: "Where the meaning of a statute is doubtful, its title may be called in aid of construction . . .; but the caption will not be permitted to control when the meaning of the text is clear. . . . Especially is this true where the headings of sections have been prepared by compilers and not by the Legislature itself."

[2]   The County argues that when a product is removed from storage and enters the manufacturing process, it is no longer an agricultural product. The evidence taken before the State Board discloses that the processing begins when the farmer removes the tobacco from the field into his barn for curing, and continues through the many steps and stages described by Mr. Thompson. Attention is called to that part of the evidence which requires different periods and places of storage after removal from the hogsheads until finally the leaf is shredded and placed in the hopper to be conveyed to the cigarette machines. It is still tobacco and still an agricultural product until it comes out of the cigarette machine in a sealed package with the Internal Revenue stamp affixed.

The contention that the product here involved is not an agricultural product is not supported by the record which contains this stipulation: "The property involved in this appeal consists of leaf tobacco belonging to the appellant which has been removed from the firm's storage facilities and transferred to their processing area for the purpose of being processed and manufactured into cigarettes and other tobacco products."

The evidence, the findings, and the stipulations fully support the conclusion of the State Board of Assessment and the judgment entered in the superior court by Judge Wood.

The judgment is

Affirmed.

Justices SHARP and LAKE did not participate in the consideration or decision of this case.