784 F.2d 545
 CLINCHFIELD RAILROAD COMPANY; Durham & Southern Railway
Company; Highpoint, Thomasville & Denton Railroad Company;
Norfolk, Franklin & Danville Railway Company; Norfolk
Southern Railway Company; Norfolk & Western Railway
Company; Seaboard Coast Line Railroad Company; Southern
Railway Company; and Winston-Salem Southbound Railway
Company, Appellees,
v.
Mark G. LYNCH, Secretary of Revenue of the State of North
Carolina; and Douglas R. Holbrook, Director, Ad Valorem Tax
Division of the North Carolina Department of Revenue;
Iredell County; Robeson County; Rowan County; Rutherford
County; Vance County; Granville County; Wilson County, Appellants,
and
Mecklenburg County; Catawba County; Durham County; Person
County; Forsyth County; Surry County; Union County;
Johnson County; Anson County; Harnett County; Wake
County; Madison County; Cabarrus County; Stokes County;
Alamance County; Columbus County; and Halifax County, Defendants.
CLINCHFIELD RAILROAD COMPANY; Durham & Southern Railway
Company; Highpoint, Thomasville & Denton Railroad Company;
Norfolk, Franklin & Danville Railway Company; Norfolk
Southern Railway Company; Norfolk & Western Railway
Company; Seaboard Coast Line Railroad Company; Southern
Railway Company; and Winston-Salem Southbound Railway
Company, Appellees,
v.
CATAWBA COUNTY; Forsyth County, Appellants,
and
Mark G. Lynch, Secretary of Revenue of the State of North
Carolina; and Douglas R. Holbrook, Director, Ad Valorem Tax
Division of the North Carolina Department of Revenue;
Iredell County; Robeson County; Rowan County; Rutherford
County; Vance County; Granville County; Wilson County;
Mecklenburg County; Durham County; Person County; Surry
County; Union County; Johnson County; Anson County;
Harnett County; Wake County; Madison County; Cabarrus
County; Stokes County; Alamance County; Columbus County;
and Halifax County, Defendants.
 Nos. 85-1398(L), 85-1399.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 5, 1985.
Decided Feb. 19, 1986.
 
 Hamlin L. Wade, Jonathan V. Maxwell (Ruff, Bond, Cobb, Wade & McNair, W. Gene Sigmon, Sigmon, Sigmon and Isenhower, George W. Boylan, Asst. Atty. Gen., on brief), for appellants.
 Everett B. Gibson (William C. Antoine, Laughlin, Halle, Gibson & McBride, Armistead J. Maupin, Charles B. Neely, Jr., Nancy S. Rendleman, Maupin, Taylor & Ellis, P.A., Courtney L. George, Seaboard System R., Inc., Henry C. Wolf, Norfolk Southern Corp., L.P. McClendon, Jr., Edward C. Winslow III, Brooks, Pierce, McLendon, Humphrey & Leonard, on brief), for appellees.
 Before WIDENER and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 CHAPMAN, Circuit Judge:
 
 
 1
 This appeal involves the second in a series of lawsuits brought by railroads operating in North Carolina against various state officials and North Carolina counties. The suits allege discriminatory taxation of real and personal property in violation of Sec. 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act), now codified at 49 U.S.C. Sec. 11503 (1982).[1] In the present action, the railroads seek relief on the basis of alleged discriminatory tax treatment during the 1981 tax year by North Carolina tax officials and nine intervenor counties.[2] The parties agree that the counties discriminated against railroad real property, and they have stipulated ratios for the amount of discrimination in each county. Therefore, this case involves the narrow issue of whether the counties have discriminated in the assessment and taxation of railroad personal property and if so, to what extent. The trial court, sitting without a jury, found discrimination on the part of the counties. In the absence of sufficient evidence to set specific levels of personal property discrimination, the court adopted the stipulated real property ratios as the standard for granting relief for all railroad property. Clinchfield II, 605 F.Supp. at 1019-20.
 
 
 2
 The counties raise these issues on appeal: (1) whether the trial court erred in placing the burden of proof on the counties to establish specific assessment ratios for locally assessed business personal property; (2) whether the trial court erred by not making specific findings on the level of assessment for business personal property in the counties and, consequently, adopting the ratios stipulated for real property; (3) whether the trial court, in finding discrimination by Forsyth County, improperly considered stored tobacco inventories, which are taxed at 60 percent of fair market value under North Carolina law; and (4) whether the opinion testimony of the railroads' expert witness was improperly admitted under Federal Rule of Evidence 703. Finding no error in the trial court's rulings on these issues, we affirm.
 
 
 3
 * The procedural background of this case, and of the earlier case involving related issues, merit some review. In Clinchfield I, the railroads sought recovery under the 4-R Act for discrimination by North Carolina tax officials and counties during the 1980 tax year with respect to all railroad property, both real and personal. The State admitted that it had discriminated against railroad real property because that property was centrally assessed and appraised annually while other commercial and industrial real property was locally assessed and appraised every eight years. The effects of inflation and appreciation on the assessed value of property was apparently leading to a form of de facto discrimination prohibited by Sec. 306. Through a sales-assessment ratio study, the railroads offered evidence of the assessment level at which nonrailroad business real property was being valued in each county, assuming railroad real property was assessed at full market value. The State did not dispute the accuracy of the study, and the primary issue in dispute was whether the court could grant relief with respect to all of the railroads' property, both real and personal, based upon the sales-assessment ratio study alone. The district court held that a credible sales-assessment ratio study showing real property discrimination was all that was required under Sec. 306 to fashion a remedy for all railroad property. Clinchfield R.R. v. Lynch, 527 F.Supp. 784, 788 (E.D.N.C.1981).
 
 
 4
 On appeal, this court affirmed the district court on slightly different grounds. First, we held that a sales-assessment ratio study alone was insufficient under Sec. 306 to prove discrimination with respect to both real and personal property. Independent evidence is required to show both the extent of personal property discrimination and the breakdown between personal and real property owned by the railroads. We held, however, that a railroad can make out a prima facie case of discrimination for all property through a sales-assessment ratio study. The burden then shifts to the State and counties to establish facts sufficient to show both higher ratios of assessment for personal property and the breakdown by percentage of the respective worths of the railroads' real and personal property. Clinchfield I, 700 F.2d at 131-32. Finally, with respect to the case at hand we held that even if it were assumed that the State and counties' statistics showed ratios of assessment for personal property at or near 100 percent, they had failed to present any evidence regarding the breakdown of railroad real and personal property, thus leaving the district court with an insufficient basis with which to fashion a meaningful alternative remedy. Id. at 132.
 
 
 5
 In the present action, the parties have stipulated the assessment levels for commercial and industrial real property in the counties during 1981. The parties have also reserved for later disposition the question of the breakdown in worth of the real and personal property of the railroads. Thus, the only issue confronting the trial court was the extent of discrimination with respect to railroad personal property. Acting under the guidance of this court's opinion in Clinchfield I, the trial court held that the counties had failed to carry their burden of showing that locally assessed business personal property was assessed at 100 percent of actual fair market value, as was railroad property. The court also held that although the counties submitted testimony that they assessed business personal property at ratios higher than those stipulated for real property, the evidence was insufficient to enable the court to make specific percentage findings on the extent of personal property tax discrimination. Therefore, the court relied upon the stipulated real property ratios in order to grant relief for both real and personal railroad property. 605 F.Supp. at 1019-20.
 
 II
 
 6
 Appellants argue that the trial court erred when it placed upon them the burden of proving specific levels of assessment for commercial and industrial personal property within the counties. They contend that the court misapplied the burden of proof allocation set forth in Clinchfield I. Appellants point to Sec. 306(2)(d) which provides: "the burden of proof with respect to the determination of assessed value and true market value shall be that declared by the applicable State law." The applicable State law, according to appellants, holds that ad valorem tax assessments are presumed to be correct, a presumption that is rebuttable by evidence of arbitrary or illegal acts by tax officials, and substantial overassessment or underassessment. In re Appeal of Amp, Inc., 287 N.C. 547, 215 S.E.2d 752 (1975). Appellants argue that they met the burden set forth in Clinchfield I by having county tax officials testify that the counties used regular and acceptable practices in assessing business personal property. Once this evidence of regularity was submitted, the counties assert that North Carolina law presumes an assessment level of 100 percent and thus requires the railroads to come forth with evidence of arbitrary or illegal action coupled with substantial disparity in assessment levels.
 
 
 7
 In Clinchfield I this court directly addressed the burden of proof allocation under Sec. 306 of the 4-R Act and North Carolina law. We specifically held:
 
 
 8
 [O]nce North Carolina was shown to have practiced discrimination with regard to real property under its statute which applies a single undifferentiated assessment to both real property and personal property [footnote omitted], the state assumed the burden of establishing facts sufficient both to warrant a different conclusion with respect to personal property and to enable the district court to fashion a decree that would not frustrate efforts to alleviate the discrimination already proven as to real property.
 
 
 9
 700 F.2d at 131.
 
 
 10
 Concerning the applicable state law, the court went on to explain:
 
 
 11
 Under North Carolina law, the Property Tax Commission is obligated to order a reduction in the assessment of a railroad's property once the railroad establishes an "inequitable difference" between its assessment and that of taxpayers whose property is assessed locally by county authorities. N.C.Gen.Stat. Sec. 105-342(c)(5). Proof of that "inequitable difference" (defined, for state equalization purposes, as a difference of 15 percent, Sec. 105-342(c)(4) ), rebuts the presumption of correctness which an appraisal enjoys, e.g., In re Appeal of Amp, Inc., 287 N.C. 547, 215 S.E.2d 752 (1975), and can be supplied, under Sec. 105-342(c)(5), by the selfsame sales-assessment ratio study favored by Sec. 306(2)(e). We conclude that, by proving discrimination as to real property, the railroads established an "inequitable difference" for purposes of Sec. 306 and, thus, that any further burden in the case before us was the state's to bear.
 
 
 12
 Id. at 131-32.
 
 
 13
 This language could not be more explicit in setting the burden of proof for 4-R Act cases under North Carolina law. By placing the burden on the counties to establish facts sufficient for the court to find levels of assessment for business personal property different from the levels stipulated for real property, the trial court properly interpreted and followed the holding of this court in Clinchfield I.[3]
 
 III
 
 14
 After considering the evidence presented at trial, the court noted that it had "no doubt that the actual levels of assessment of business personal property are greater than those set out in the stipulations." 605 F.Supp. at 1019. The court held, however, that the ratios were clearly not 100 percent. Since the counties had not attempted to show ratios between 100 percent and those stipulated for realty, the court found that it was left without evidence to fashion a "meaningful alternative remedy." Id. at 1019-20. Appellants contend that the trial court misinterpreted the "meaningful alternative remedy" language used by this court in Clinchfield I, claiming that that language applies only to evidence on the breakdown issue. In addition, appellants assert that once the trial court recognized that the actual levels of personal property assessment were greater than the ratios stipulated for real property, the court abandoned its duty under Fed.R.Civ.P. 52(a) to make specific percentage findings of those levels.
 
 
 15
 The trial court did not misinterpret the "meaningful alternative remedy" language of Clinchfield I. This court recognized in Clinchfield I that once the railroads have established their prima facie case of discrimination with respect to realty, the state must show both the level of assessment for business personal property in each county and the breakdown of the proportional worth of the railroads' real and personal property. On both points, the state must adduce sufficient evidence to allow the trial court to fashion a meaningful alternative remedy. 700 F.2d at 132. The specific holding in Clinchfield I was that even if it could be assumed that Mecklenburg County assessed its business personal property at 100 percent, "there was literally no evidence in the record to show a breakdown by percentage for the railroads ... of the respective worths of their real and personal property holdings." Id.
 
 
 16
 In this case, the breakdown issue has been reserved for later disposition by the parties. That, however, did not relieve appellants of their burden to submit enough evidence on the issue of assessment ratios for business personal property to allow the trial court to fashion a meaningful alternative remedy. Appellants did not introduce such evidence in this case.
 
 
 17
 The counties consistently argued at trial that the court should presume the assessment ratios to be 100 percent under North Carolina law since the counties did the best assessment job that they could. Tax officials from each county testified as to the procedures used in 1981 to verify that businesses were reporting the correct quantity and value of their personal property. Appellants also called a property valuation specialist to testify concerning a study which compared 1981 income tax returns with business personal property tax returns for the same year in Rutherford, Iredell and Granville counties. The contention was that the investment values reported were approximately the same on both returns and thus indicated that taxpayers were not undervaluing their property for property tax purposes.[4]
 
 
 18
 Based upon an erroneous view of their burden of proof, the counties maintained throughout the trial that the court should accept its evidence as proof of 100-percent assessment levels. The counties presented no evidence and offered no theories to aid the court in setting ratios of assessment between 100 percent and those stipulated for real estate. This "all or nothing" approach left the court with no means to fashion a meaningful alternative remedy, and consequently, the court had no choice but to adopt the ratios stipulated for real estate.
 
 
 19
 The trial court made comprehensive findings of fact as to the most acceptable methods of assessing commercial and industrial property. It then reviewed the facts relevant to each of the nine counties and found specifically where each county fell short in its assessment practices. Based upon these findings of fact, the court concluded that each county failed to establish by the preponderance of the evidence that personal property was assessed at 100 percent of market value. Given no evidence upon which to fashion a meaningful alternative remedy, the court took the sensible approach of adopting the stipulated real estate ratios for all property in the counties. We find this approach to be entirely consistent with Clinchfield I and thus find no error.
 
 IV
 
 20
 Appellants contend that the trial court committed error by considering stored tobacco inventories, which are taxed at 60 percent of the value of other business personal property under North Carolina law,[5] in the court's finding of tax discrimination by Forsyth County. Approximately 28 percent of business personal property in Forsyth County consists of stored tobacco inventories, and the trial court found that the fact that this property was valued at 60 percent of market value was a "most important" factor in its conclusion that Forsyth County discriminated against the railroads.[6] 605 F.Supp. at 1014. We find no error in this ruling.
 
 
 21
 The purpose of Sec. 306 of the 4-R Act is to eliminate state and local government taxation practices which discriminate against railroads. Congressional concern over tax discrimination was evident as early as 1961, when a special study group recommended to the Senate Committee on Commerce that it consider an antidiscrimination tax bill. See Clinchfield I at 128 n. 1. The study urged that such a bill would insure that railroads
 
 
 22
 receive equal treatment with other taxpayers subject to the same tax rates in accordance with applicable state law. The [proposed bill] in no way alters the freedom of the State to tax its taxpayers as in its discretion it deems best, so long as such carriers are accorded equal tax treatment with other taxpayers.
 
 
 23
 Special Study Group on Transportation Policies in the United States, 87th Cong., 1st Sess., National Transportation Policy 466 (Comm.Print.1961); see also S.Rep. No. 1483, 90th Cong., 2d Sess. 5 (1968); S.Rep. No. 91-630, 91st Cong., 1st Sess. 6 (1969). In the 1968 Committee on Commerce report, Senator Lausche challenged the notion of equal tax treatment, raising questions as to what effect the proposed bill would have on State schemes granting tax breaks to certain types of property. S.Rep. No. 1483, 90th Cong., 2d Sess. 25-26 (1968). In setting the final form of Sec. 306 in 1975, however, the Congressional Conference Committee deleted a Senate amendment which would have made Sec. 306 inapplicable to any State which, on the date of enactment, had in effect a constitutional provision for the reasonable classification of property for State purposes. S.Rep. No. 94-595, 94th Cong., 1st Sess. 138-39 (1975), reprinted in 1976 U.S.Code Cong. & Ad.News 14, 153-154; see also 121 Cong.Rec. 42169, 42205 (1975) (comments of amendment sponsor Senator Baker); Tennessee v. Louisville & Nashville R.R., 478 F.Supp. 199, 201-02 (M.D.Tenn.1979) (discussion of legislative history of Sec. 306), aff'd mem., 652 F.2d 59 (6th Cir.1981), cert. denied, 454 U.S. 834, 102 S.Ct. 135, 70 L.Ed.2d 114 (1981). Thus, as it was finally passed, Sec. 306 contained no language explicitly excepting from its terms the classification of nonrailroad property at reduced assessment or tax rate levels.
 
 
 24
 Certainly, the 4-R Act does not encroach upon the State's right to tax its citizens as it sees fit, as long as that tax does not discriminate against railroads. The problem with a statute such as N.C.Gen.Stat. Sec. 105-277(a) is not that it grants tax breaks for certain agricultural products. But the problem is that if states are allowed to grant tax reductions to an increasing number of property items without taking into account the effect on the taxation of railroad property, the antidiscriminatory spirit and intent of Sec. 306 would soon be swallowed up in the exceptions.
 
 
 25
 Consequently, we hold that the trial court was correct in considering as a factor in its finding of tax discrimination the fact that stored tobacco inventories were taxed at only 60 percent of fair market value. This factor, along with the trial court's findings of procedural shortcomings in the county tax office, fully support the court's conclusion that Forsyth County did not meet its burden to show that business personal property was assessed at 100 percent of market value.
 
 
 26
 Appellants raise three opposing arguments. First, they argue that Sec. 105-277(a) provides for a 40-percent reduction in the tax rate applicable to stored tobacco inventories and thus should be reviewed under Sec. 306(1)(c) instead of Sec. 306(1)(a).[7] Appellants assert that the court should not consider stored tobacco inventories because the tax rate applied to them is not the tax rate generally applicable to nonrailroad business property. They rely on Trailer Train Co. v. State Board of Equalization, 697 F.2d 860 (9th Cir.1983), cert. denied, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983), for the proposition that the "generally applicable" rate chosen for comparison should be the rate applied to the majority of nonrailroad property.
 
 
 27
 The record is not clear whether, in practice, the 40-percent rate reduction is applied in determining the value of tobacco inventories to be listed on the assessment rolls, or whether the percentage reduction is applied directly to the tax rates determined by the local taxing authorities.[8] Regardless of how Sec. 105-277(a) is applied, however, the effect is the same: tobacco inventories are being taxed at 60 percent of their fair market value. Section 105-277(a) does not set tax rates; that is the responsibility of the local taxing authorities. Section 105-277(a) merely sets a percentage figure at which stored tobacco inventories will be taxed. We refuse to allow states to escape the provisions of Sec. 306(1)(a) by couching discriminatory valuation practices in terms of percentage tax rate reductions.[9]
 
 
 28
 Second, appellants rely on the case of ACF Industries v. Arizona, 714 F.2d 93 (9th Cir.1983), for the proposition that untaxed property should not be included in determining the average of assessed value for fully taxed property. We agree with the trial court that ACF Industries is distinguishable. 605 F.Supp. at 1014. The court in ACF Industries was concerned only with totally exempt property, while the tobacco inventories in this case are taxed, but at a reduced rate. The 4-R Act does not require a state to tax all business personal property; the state is free to grant any exemptions. What the Act does require, however, is that whatever property is taxed should be taxed at a rate that does not discriminate against railroad property.
 
 
 29
 Third, appellants argue that the 60-percent valuation of tobacco inventories cannot discriminate against the railroads because anyone who owns stored tobacco inventories is eligible for the tax break, including the railroads. Once again, we concur in the reasoning of the trial court, which noted that Sec. 105-277(a) is clearly designed to benefit the tobacco industry, particularly those businesses which warehouse tobacco. 605 F.Supp. at 1014. Railroads are not in the business of storing tobacco, and thus Sec. 105-277(a) results in the kind of de facto discrimination prohibited by Sec. 306 of the 4-R Act.
 
 V
 
 30
 The final issue is whether the trial court erred in admitting certain opinion testimony proffered by the railroads' expert witness, Dr. Dick Netzer. Dr. Netzer based his opinion on a study he had conducted which estimated the total actual market value of all personal property in each county. With this figure he was able to estimate personal property assessment ratios for the counties. See Clinchfield II, 605 F.Supp. at 1010-11. In his study, Dr. Netzer relied upon data obtained from the United States Bureau of Census. Dr. Netzer admitted on the stand that he is the only public finance economist, to his knowledge, who is currently doing work in the specific area of using Census Bureau data to make estimates of the market value of assets other than real property.[10] Appellants contend that Dr. Netzer's opinion should have been excluded under Federal Rule of Evidence 703 because the railroads failed to show that other economists in Dr. Netzer's field commonly use or rely on census data for the purpose of showing the level of assessment of business personal property in a given county.
 
 
 31
 Federal Rule of Evidence 703 permits an expert to base his opinion testimony on facts or data which need not be admissible in evidence, "if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, ...." The basic data relied upon by Dr. Netzer in this case were the reports of the United States Bureau of Census, and the railroads presented uncontroverted testimony that this type of data is regularly relied upon by economists in the field of public finance to make opinions or draw inferences of an economic nature.
 
 
 32
 Moreover, while "not every ostensibly scientific technique should be recognized as the basis for expert testimony, ... [a]bsolute certainty of result or unanimity of scientific opinion is not required for admissibility." United States v. Baller, 519 F.2d 463, 466 (4th Cir.1975). A court should not exclude expert testimony simply because it involves a new method or novel theory. "Unless an exaggerated popular opinion of the accuracy of a particular technique makes its use prejudicial or likely to mislead the jury, it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross examination and refutation." Id. This is especially true in a civil, non-jury case where, as here, the appellants deposed the railroads' expert, received a copy of his written opinion and analysis well in advance of trial, and were afforded an opportunity to cross examine Dr. Netzer at length about his opinions, methods, and the underlying data he utilized.[11]
 
 
 33
 Finally, it should be noted that appellants' cross examination of Dr. Netzer did indeed bring out several limitations in his methodology, which the trial court found to diminish its probative weight. The trial court stated:
 
 
 34
 These and other problems make it clear that Dr. Netzer's ratios do not accurately reflect the ratios of locally-assessed tax value to total actual fair market value of business personal property in each county. Nevertheless, the methodology in Dr. Netzer's report was basically sound, and the report accordingly does provide some evidence that business personal property in the nine intervenor counties is not assessed at 100 per cent of fair market value.
 
 
 35
 605 F.Supp. at 1011; see also id. at 1019.
 
 
 36
 The trial court properly admitted Dr. Netzer's estimates of personal property assessment levels into evidence, and once the opinion evidence was admitted, the court properly weighed its probative value as trier of fact.
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 In 1978, Sec. 306 of the 4-R Act was recodified as part of the Revised Interstate Commerce Act. See Pub.L. No. 95-473, 92 Stat. 1466 (1978). Although the recodification was not intended to effect any substantive change in the meaning of the 4-R Act, the language differs significantly from the language of Sec. 306. This court has held previously that the language of Sec. 306 must be used for purposes of statutory analysis. Richmond, Fredricksburg & Potomac R.R. v. Department of Taxation, Commonwealth of Virginia, 762 F.2d 375, 377 (4th Cir.1985); Clinchfield R.R. v. Lynch, 700 F.2d 126, 128-29 n. 1 (4th Cir.1983) (Clinchfield I)
 
 
 [2]
 The state officials are Mark G. Lynch, Secretary of Revenue of the State of North Carolina, and Douglas R. Holbrook, Director of the Ad Valorem Tax Division of the North Carolina Department of Revenue. Of the eighty-five counties in North Carolina which contain railroad property and against which plaintiffs sought relief, twenty-four were allowed to intervene as defendants without objection by plaintiffs. Fifteen of these counties subsequently withdrew from the action, leaving nine intervenor counties: Catawba, Forsyth, Granville, Iredell, Robeson, Rowan, Rutherford, Vance and Wilson. Clinchfield R.R. v. Lynch, 605 F.Supp. 1005, 1008 (E.D.N.C.1985) (Clinchfield II)
 
 
 [3]
 We recognize that the task of proving specific levels of assessment for business personal property is a difficult one. Appellants argue that the burden is in fact "impossible" since there is no method for valuing business personal property comparable to the sales-assessment ratio study for real property. We have already addressed this argument in Clinchfield I. See 700 F.2d at 133-34
 
 
 [4]
 The trial court identified several problems with this study. Although finding that it constituted some evidence in support of the counties' position, the court held that the study was insufficient to show that the three counties assessed business personal property at 100 percent of actual market value. 605 F.Supp. at 1019
 
 
 [5]
 N.C.Gen.Stat. Sec. 105-277(a) (1985)
 
 
 [6]
 The court also considered the stored tobacco inventories in its finding of discrimination in Wilson County. 605 F.Supp. at 1018
 
 
 [7]
 Section 306(1) forbids a state, subdivision of a state, or any authority acting for a state or subdivision from:
 (a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.
 (b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).
 (c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.
 (d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.
 
 
 [8]
 Language in a 1974 state case applying Sec. 105-277(a) to tobacco inventories in Forsyth County indicates that the County Board of Equalization and Review itself has treated Sec. 105-277(a) as an assessment reduction, not a rate reduction, statute. Appeal of Forsyth County, 285 N.C. 64, 203 S.E.2d 51 (1974). The issues in that case concerned whether certain tobacco inventories were to be taxed at "60% of the tax rate applicable to other species of property." The State Board of Assessment, sitting as the State Board of Equalization and Review, made findings and issued this order, which was affirmed on appeal:
 WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the action of the Forsyth County Board of Equalization and Review in assessing the subject property at the full tax value rather than the 60% rate was in error and is hereby reversed. (emphasis added).
 
 
 [203]
 S.E.2d at 54
 
 
 [9]
 This is not a case such as Trailer Train, where the tax rates themselves are at issue. In Trailer Train, the court was reviewing California's taxation scheme, which had different rates for two different classes of property listed as "secured" or "unsecured." Nonrailroad property was included in both categories, and the court decided for the purposes of that case that the "generally applicable" rate would be the rate applied to the property class which contained the majority of business property. 697 F.2d at 867
 
 
 [10]
 Dr. Netzer is director of the Urban Research Center at New York University, former Dean of the Graduate School of Public Administration at New York University, and former Chairman of the Economics Department at New York University. He testified that he began developing his method of comparing listed values of personal property with the property's actual market values while preparing his 1966 book, Economics of the Property Tax (Brookings Institution, 1966)
 
 
 [11]
 In Sec. 306(2)(e), Congress specifically expressed a preference for the use of sales-assessment ratio studies to prove discrimination with respect to real estate. Congress was silent, however, on how to prove personal property discrimination. Given the nature of this court's rulings here and in Clinchfield I, studies and methodologies attempting to determine personal property assessment levels, such as that of Dr. Netzer, should be encouraged and refined in order to aid the court in its task under the 4-R Act