IN THE MATTER OF: THE APPEAL OF DUKE POWER COMPANY FROM THE LEVEL OF APPRAISAL OF ITS PROPERTY IN COMPARISON WITH THE LEVEL OF APPRAISAL OF LOCALLY APPRAISED PROPERTY IN GUILFORD COUNTY FOR 1983

No. 8510PTC1359

(Filed 19 August 1986)

**Taxation § 25.4— ad valorem taxes—public service company—inequitable difference in valuation**

    By introducing a sales/assessment ratio study showing that Guilford County appraised locally assessed real property at 80.12% of true market value for 1983, a power company established a *prima facie* case of "inequitable difference" under N.C.G.S. § 105-342(c) between the level of assessment of locally appraised property in Guilford County and the level of the 1983 assessment of the power company's property in Guilford County at 100% of fair market value by the Department of Revenue, and the burden shifted to Guilford County to rebut the power company's evidence as to real property and to come forward with evidence as to the assessment levels for personal property.

APPEAL by petitioner from the Final Decision of the North Carolina Property Tax Commission entered 6 September 1985. Heard in the Court of Appeals 13 June 1986.

Duke Power Company (Duke) is a public service company as defined in G.S. 105-333(14). Its property is subject to annual appraisal, apportionment and allocation under the provisions of G.S. 105-335 through -338.

Pursuant to G.S. 105-342(c) Duke petitioned the Guilford County Board of Commissioners for a 19.88 percent reduction in the tax assessment of Duke system property allocated to Guilford County for 1983 contending there was "inequitable difference" between the level of assessment of its system property and the level of assessment of locally appraised property in Guilford County. Duke's petition was accompanied by a sales/assessment ratio study showing real estate assessments in Guilford County at 80.12 percent of fair market value. According to statute, G.S. 105-342(c)(4)-(5), a determination that Guilford County assessed the property of other taxpayers at 85 percent of fair market value or less constitutes an "inequitable difference" entitling Duke to a reduction in the assessment of its property allocated to Guilford County to the level found to exist in Guilford County. Guilford denied Duke's request and Duke appealed to the Property Tax Commission which heard the matter in April and September of 1984.

At the first hearing before the Property Tax Commission in April 1984, Duke presented evidence through several expert witnesses, including Dr. A. R. Manson, Dr. Richard Netzer and Mr. Gerald Searle, and two other witnesses, Mr. Curtis West and Mr. Jim Murphy. That evidence included extensive written reports by each expert to the effect that the combined level of assessment of real and personal property by Guilford County was less than 82 percent of fair market value, and testimony by Murphy that 95 percent of Duke's system property in Guilford County was real property and 5 percent personal property.

Guilford County responded through exhibits and testimony from tax department employees, one of whom was Brice A. Wellmon, certified assessment evaluator, who testified that under his direction and supervision Guilford County conducted a similar study of real property which showed that locally assessed real property in Guilford County to be 83.00 percent of fair market

value. In addition, Guilford County contended that personal property (with the exception of household personalty) was assessed at 100 percent of fair market value.

At the conclusion of the first hearing Duke requested the Commission to issue a subpoena to Guilford County for the tax records for 1982-84. This request was made to enable Dr. Manson to complete a sales/assessment ratio study of locally assessed personal property. The Commission issued the subpoena but only for assessment data for the tax year 1983. After that information was obtained, a second hearing was held in September 1984 for the purpose of receiving that study and the evidence concerning it.

At the second hearing Dr. Manson and Mr. West again testified in Duke's behalf, in support of their personal property study which showed that the assessment level of property in Guilford County was 85.82 percent for business motor vehicles and 91.18 percent for machinery and equipment. Guilford responded through Mr. Roger C. Cotten, tax department director, who testified about the validity of Guilford's personal property assessment procedures and that personalty was assessed at 100 percent.

Pursuant to G.S. 105-342(d) the Commission made findings of fact and conclusions of law and issued an order denying Duke's petition for a reduction in the assessment of Duke's system property in Guilford County. The Commission found that Guilford County had assessed local property at 85.19 percent of its fair market value. The Commission accepted Dr. Manson's sales/assessment ratio study of Guilford's real property at 80.12 percent of its fair market value. As to personal property the Commission found that machinery and equipment, business motor vehicles, inventory, farm machinery, and livestock were all assessed at 100 percent of their fair market values and that household personal property was assessed at 80.12 percent of fair market value, the same level as realty.

In its consideration of all the evidence presented, the Commission concluded that "the evidence presented by the appellant [Duke] is insufficient to carry the burden of showing that, with the exception of household personal property, the county [Guilford] has failed to assess personal property at market value as defined in G.S. 105-283."

The following table from the Commission's order sets forth the Commission's findings:

| PROPERTY TYPE | ASSESSED VALUE | RATIO | MARKET VALUE |
|---|---|---|---|
| Inventory | $ 1,069,433,865 | 1.00 | $ 1,069,433,865 |
| Machinery & Equip. & Furn. & Fix. | 879,367,843 | 1.00 | 879,367,843 |
| Motor Vehicles | 789,659,796 | 1.00 | 789,659,796 |
| Farm Machinery & Livestock | 15,428,916 | 1.00 | 15,428,916 |
| Household Personal Property | 157,082,621 | .8012 | 196,059,187 |
| Real Estate | 6,288,766,981 | .8012 | 7,849,184,948 |
| | $ 9,199,740,022 | | $10,799,134,556 |

$$\frac{\$\ 9,199,740,022}{\$10,799,134,556} = 85.19\%$$

The assessed values in the Commission's order and in the table are those provided by Guilford. The ratios are derived by dividing each category of assessed value by the appropriate market value for that category.

From the final decision of the Property Tax Commission denying its petition for a reduction in the assessment of its system property, Duke Power Company appeals.

*Robinson, Bradshaw & Hinson, by Robert W. Bradshaw, Jr., Richard A. Vinroot and Thomas B. Griffith for petitioner-appellant.*

*W. B. Trevorrow for respondent-appellee, Guilford County.*

EAGLES, Judge.

By its first assignment of error Duke contends that the Property Tax Commission committed reversible error by failing to shift the burden of proof to Guilford County after Duke introduced competent, material and substantial evidence of an inequitable difference between the level of assessment of Duke's system property and the level of assessment of the property of other Guilford County taxpayers. We agree.

At the first hearing before the Property Tax Commission in April, 1984, Duke presented evidence through its expert witness, Dr. Manson, and his real property sales/assessment ratio study to the effect that Guilford County had assessed real property at 80.12 percent of fair market value on 1 January 1983. Duke then made a motion that the Commission shift the burden of proof to Guilford County with regard to both real and personal property. Duke contended that its showing of an inequitable difference with respect to real property rebutted any presumption of correctness afforded to the county's appraisal and tax procedures. The Commission denied the motion and Duke proceeded to introduce additional evidence that Guilford County had assessed both real and personal property at less than 85 percent.

It is a well settled principle of law in this State that ad valorem tax assessments are presumed correct. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 215 S.E. 2d 752 (1975). However, this presumption of correctness is only one of fact and therefore, it is rebuttable. *Id.*

In this State all tangible property (both real and personal) subject to ad valorem taxation must be appraised and assessed at its true value (market value) in money. G.S. 105-283 and 105-284. The property of "public service companies" (defined in G.S. 105-333(14) to include electric power companies) is centrally assessed for ad valorem tax purposes by the North Carolina Department of Revenue. G.S. 105-288. The department annually values the public service companies' system property in accordance with G.S. 105-335(b)(1) and allocates the valuations of that property among the ad valorem taxing jurisdictions in this State. G.S. 105-338 and 105-341. All real and personal property subject to ad valorem taxation other than public service company property is appraised and assessed locally by each county. Locally assessed real property is reappraised for assessment purposes every eight years, while locally assessed personal property is reappraised annually. G.S. 105-285 through -287. As a result of this statutory scheme and the effects of inflation and appreciation, the ratio of assessed value of locally assessed real property to its true market value diminishes during each eight-year period until at reappraisal the ratio is restored to 100 percent. In contrast, public service companies' system property (both real and personal) is maintained through annual reappraisal at 100 percent every year.

In order to ameliorate this statutorily created inequity as to the appraisal of real property, our legislature enacted G.S. 105-342(c) which provides in pertinent part that:

> (1) In the year in which a general reappraisal of real property is required to be conducted in a county under the provisions of G.S. 105-286(a), and in the third and seventh years following the effective date of a county's last general reappraisal of real property, any public service company whose property is subject to appraisal under this Article may petition the board of county commissioners in writing for a reduction in the assessment of the public service company's property by the county on the ground that there exists an inequitable difference between the level of assessment of locally appraised property and that of the public service company's property by the Department of Revenue. The request for reduction shall be filed with the board of commissioners not later than April 1 of the year for which it is made. The request shall set forth with particularity the alleged inequitable difference in levels of appraisal and shall include any sales/assessment ratio studies or other appraisal information which the public service company desires to be considered by the board of commissioners. . . .

The quoted language, part of G.S. 105-342(c), was repealed by Session Laws 1985, c. 601, ss. 4 and 5 effective 1 January 1987 but applies here.

An "inequitable difference" is defined as a difference in the level of appraisals of fifteen percent or more. G.S. 105-342(c)(4). The parties here stipulated that in 1983 Duke's system property was assessed at 100 percent of fair market value. Duke contends that by introducing evidence that locally assessed real property in Guilford County was appraised, as of 1 January 1983, at 80.12 percent of fair market value, the burden of proof should shift to Guilford County to establish the level at which Guilford appraises both locally assessed real and personal property. We agree.

Duke relies primarily on *Clinchfield Railroad Company v. Lynch*, 700 F. 2d 126 (4th Cir. 1983) (*Clinchfield I*) and *Clinchfield Railroad Company v. Lynch*, 784 F. 2d 545 (4th Cir. 1986) (*Clinchfield II*). We believe that the logic of these cases should control here. In *Clinchfield I* railroads operating in North Carolina

brought suit against various state officials and counties alleging discriminatory taxation of real and personal property in violation of Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 ("the 4-R Act"), 49 U.S.C. Section 11503. The 4-R Act was enacted to eliminate property tax discrimination by the states against the railroads. Section 306 is directed at both real and personal property taxation and prescribes certain remedies to correct inequities in both categories. Section 306 requires that assessments imposed on railroad property be compared with assessments imposed on other commercial or industrial property.

In answering the questions before it, the court in *Clinchfield I* considered where the burden of proof should fall once the taxpayer demonstrates by a sales/assessment ratio study that discriminatory treatment existed with respect to real property.

We are satisfied that once North Carolina was shown to have practiced discrimination with regard to real property under its statute which applies a single undifferentiated assessment to both real property and personal property. [G.S. 105-333 through -341] the state assumed the burden of establishing facts sufficient both to warrant a different conclusion with respect to personal property and to enable the district court to fashion a decree that would not frustrate efforts to alleviate the discrimination already proven as to real property.

. . . Under North Carolina law, the Property Tax Commission is obligated to order a reduction in the assessment of a railroad's property once the railroad establishes an "inequitable difference" between its assessment and that of taxpayers whose property is assessed locally by county authorities. N.C. Gen. Stat. Section 105-342(c)(5). Proof of that "inequitable difference" (defined, for state equalization purposes, as a difference of 15 percent, Section 105-342(c)(4) ), rebuts the presumption of correctness which an appraisal enjoys, *e.g.*, *In re Appeal of Amp, Inc.*, 287 N.C. 547, 215 S.E. 2d 752 (1975), and can be supplied, under Section 105-342(c)(5), by the selfsame sales-assessment ratio study favored by Section 306(2)(e).

700 F. 2d at 131.

In *Clinchfield II*, the court considered the narrow issue of whether the named counties discriminated in the assessment and

taxation of railroad personalty and if so, to what extent. In so do-ing, the court explained its holding in *Clinchfield I*:

> First, [in *Clinchfield I*] we held that a sales-assessment ratio study alone was insufficient under Section 306 to prove dis-crimination with respect to both real and personal property. . . . We held, however, that a railroad can make out a prima facie case of discrimination for all property through a sales-assessment ratio study. The burden then shifts to the State and counties to establish facts sufficient to show both higher ratios of assessment for personal property and the break-down by percentage of the respective worths of the railroads' real and personal property.

784 F. 2d at 548. Further, the court in *Clinchfield II* rejected the counties' argument that the burden of proof should not have shift-ed since North Carolina law provides that ad valorem tax assess-ments are presumed to be correct; a presumption that is rebutted only by evidence of arbitrary or illegal acts by tax officials and substantial overassessment or underassessment. *Id.* at 549. *See In re Appeal of Amp, Inc., supra.* The counties in *Clinchfield II* argued that once they presented evidence of regularity, North Carolina law presumes 100 percent assessment and requires the taxpayer to come forward with evidence of arbitrary or illegal acts and substantial disparity in assessment levels. The Fourth Circuit answered the counties' contentions by reiterating its earli-er holding in *Clinchfield I*, that once North Carolina was shown to have discriminated with respect to real property assessment the burden shifted to the State and counties to establish facts suffi-cient to warrant a different conclusion with respect to personal property. 784 F. 2d at 549 (quoting *Clinchfield I*, 700 F. 2d at 131).

G.S. 105-345.2 is the controlling judicial review statute for ap-peals from the Property Tax Commission. *In re McElwee*, 304 N.C. 68, 283 S.E. 2d 115 (1981). Subsection (b) of the statute pro-vides in pertinent part that:

> (b) The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, infer-ences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error. . . .

Duke introduced competent, material and substantial evidence by its sales/assessment ratio study that Guilford County appraised locally assessed real property at 80.12 percent of true market value. Under the logic of *Clinchfield I* and *II*, this established a prima facie case of an "inequitable difference" sufficient to shift the burden to the county to rebut Duke's evidence as to real property and to come forward with evidence as to the assessment levels for personal property. In denying Duke's motion, the Commission refused to shift the burden and based its conclusion of law, that the overall assessment of property in Guilford County as of 1 January 1983 was 85.19 percent, on its opinion that Duke's evidence was insufficient to carry the burden of showing that the county failed to assess personal property at market value. We believe that the denial of Duke's motion to shift the burden of proof and the Commission's opinion that Duke carried the burden with respect to personal property constitutes an error of law as set forth in G.S. 105-345.2(b)(4).

Guilford's argument that the *Clinchfield* cases do not apply because they concern a federal statute (the 4-R Act) must be rejected. As explained in *Clinchfield I*, the federal statute, specifically Section 306(2)(d), provides that the burden of proof with respect to determining assessed value and true market value "shall be that declared by the applicable State law." 700 F. 2d at 131. In determining the burden of proof under Section 306 the

Fourth Circuit Court was required to interpret and apply North Carolina law as to the burden of proof and did so under the provisions of G.S. 105-342(c). Their interpretation was correct.

Additionally, in opposing the application of the *Clinchfield* cases, Guilford County argues three reasons that the sales/assessment ratio study is not the "clear and exclusive" means for a public service company to establish an "inequitable difference." First, they note that the federal district court in *Clinchfield Railroad Company v. Lynch*, 527 F. Supp. 784 (E.D.N.C. 1981) approved of their argument that a study which excludes personal property is incomplete. However, the district court was bound by the provisions of Section 306 which clearly expressed Congress' preference for proof of discrimination by sales/assessment ratio studies. Second, the provisions of G.S. 105-342(c)(1) require the inclusion of "sales/assessment ratio studies *or other appraisal* information. . . ." [Emphasis added.] Third, G.S. 105-342(d) provides that at a hearing under this Section the Commission shall hear *all* of the evidence offered by the taxpayers. In light of these factors, we are not persuaded by Guilford's argument here.

First, as we have stated in relying on the *Clinchfield* cases, by introducing a sales/assessment ratio study showing real property assessment at 80.12 percent of true market value, Duke made out a prima facie case of an "inequitable difference." As *Clinchfield II* points out, a sales/assessment ratio study *alone* is insufficient to *prove* discrimination. It is only sufficient to make out a prima facie case and shift the burden of proof from the taxpayer to the State and counties. 784 F. 2d at 548. Second, G.S. 105-342(c) was enacted to alleviate the inequity created by our statutory scheme of appraising locally assessed real property every eighth year and appraising centrally assessed public service companies' system property (real and personal) every year. The inequity lies with real property appraisal and assessment. By showing an "inequitable difference" with respect to real property, the public service company has demonstrated the inequity which the statute seeks to correct. Therefore, we believe our decision is consistent with the legislative purpose of enacting G.S. 105-342(c).

Accordingly, we reverse the Commission's final decision and remand the case for further proceedings consistent with this opinion. Since we have disposed of this case on the basis of appellants'

first assignment of error we need not reach appellants' second and third assignments.

Reversed and remanded.

Judges ARNOLD and PARKER concur.