IN THE MATTER OF: THE APPEAL OF BOBBY J. ALLRED, A. LEONARD ALLRED, *ET AL.*, FROM THE DECISION OF THE RANDOLPH COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1995 AND 1996

No. COA97-78

(Filed 17 February 1998)

## 1. Taxation § 97 (NCI4th)— Property Tax Commission—not bound by N.C.G.S. § 105-287(b)

The Property Tax Commission was not bound by the restrictions of N.C.G.S. 105-287(b) in considering Randolph County's appeal from the County Board of Equalization and Review's order reducing a property tax appraisal. Under N.C.G.S. § 105-290(b)(3), the Commission has general supervisory power over the valuation and taxation of property throughout the State and authority to correct improper assessments and no legislative intent to limit the Commission's appellate authority by the restrictions set out in N.C.G.S. 105-287(b)can be ascertained. Even assuming that the Commission was subject to N.C.G.S § 105-287(b), there was no

error because the Commission reduced the appraisals based on its finding that they resulted from an arbitrary and illegal valuation method, which is not excluded under N.C.G.S. § 105-287(b).

**2. Taxation § 82 (NCI4th)— Property Tax Commission—valuation method—arbitrary—true value exceeded**

The property owners (petitioners in an appeal to the Property Tax Commission) sufficiently met their burden of producing competent, material and substantial evidence to show that respondent (Randolph County) used an arbitrary and illegal valuation method in appraising their property and adequately rebutted the presumption of correctness in that the assessments exceeded the true value of the property by $388,840.

Appeal by respondent from order entered 15 October 1996 by the Property Tax Commission, sitting as the State Board of Equalization and Review. Heard in the Court of Appeals 17 September 1997.

*Keziah, Gates & Samet, L.L.P., by Steven H. Bouldin and Andrew S. Lasine, for petitioners-appellees.*

*Gavin, Cox, Pugh and Gavin, by Alan V. Pugh and Richard L. Cox, for respondent-appellant.*

TIMMONS-GOODSON, Judge.

Randolph County (hereinafter "respondent") appeals from a final order of the Property Tax Commission (hereinafter "the Commission"), sitting as the State Board of Equalization and Review, which reduced the 1995 and 1996 ad valorem tax appraisals of property owned by Bobby J. Allred, A. Leonard Allred, Carl L. Allred and Evelyn Allred Ward (hereinafter "petitioners"). Petitioners purchased an industrial building and tract of land located in Randolph County, North Carolina, from Gai-Tronics Corporation for $1,200,000.00 on 10 November 1993. Gai-Tronics had purchased the property in December of 1992 from a competitor, Gulton Industries, for $1,775,000.00. The property in question is divided into two parcels for tax purposes, and only one parcel, Parcel No. 6798-29-9947, is the subject of this appeal. By stipulation of the parties, the other parcel has a true value of $101,790.00.

On 1 January 1993, following its octennial general reappraisal, respondent appraised petitioners' property for ad valorem tax purposes at a value of $1,825,790.00. The property received the same val-

uation on 1 January 1994. Neither assessment was appealed. However, on 1 January 1995, respondent increased its assessment of petitioners' property to $1,838,840.00. This increase was based on a new addition to the building and a clerical error omitting a portion of the acreage. Petitioners appealed this assessment to the County Board of Equalization and Review in 1995, and again in 1996. The Board denied both appeals pursuant to North Carolina General Statutes section 105-287. Specifically, the Board found that the 1995 appraisal was not confounded by any clerical or mathematical errors or misapplications of the schedules, standards, or rules. Petitioners appealed the Board's decisions to the Commission.

At the hearing before the Commission, petitioners presented the expert testimony of Ronald D. Crowder, who, utilizing the income, comparable sales and replacement cost valuations methods, opined that the true value of both parcels combined was $1,450,000.00. Mr. Crowder also testified about the unique circumstances involved in the 1992 sale between Gulton Industries and Gai-Tronics. Respondent countered Mr. Crowder's testimony with that of Marcus D. Frick, respondent's commercial and industrial appraiser. Mr. Frick explained the valuation method adopted and used by respondent in assessing petitioners' property. According to Mr. Frick, respondent employed a replacement cost method modified for the local market and confirmed that this method was properly applied to petitioners' property.

At the close of the evidence, the Commission determined that respondent did not act arbitrarily as to the 1993 and 1994 tax assessments of petitioners' property but used an illegal and arbitrary valuation method in conducting the 1995 and 1996 valuations. Respondent appeals.

---

On appeal, respondent cites ten assignments of error, which are reduced to three arguments in respondent's brief. These arguments are that the Commission erred (1) in determining that it was not restricted by North Carolina General Statutes section 105-287 with respect to adjusting a tax assessment in a year in which no general reappraisal or horizontal adjustment was made; (2) in finding that the sale price received in a transaction made subsequent to a general reappraisal was a statutorily authorized basis for adjusting an appraisal; and (3) in finding that respondent used an arbitrary and illegal method of valuing petitioners' property in 1995 and 1996. We turn now to the merits of each argument.

**[1]** First, respondent contends that the Commission was bound by the restrictions set forth in section 105-287(b)(2) of the General Statutes, which forbids a county tax assessor to alter a valuation in a non-reappraisal year on the basis of "inflation, deflation, or other economic changes affecting the county in general." N.C. Gen. Stat. § 105-287(b)(2) (1995). In a separate but related argument, respondent contends that the Commission transgressed its statutory authority by considering the 1993 sale from Gai-Tronics to petitioners in determining the validity of the assessments at issue in this case. Specifically, respondent maintains that any discrepancy between the contested assessments and the 1993 sale price reflected economic factors, such as inflation or deflation, which are specifically excluded by section 105-287(b). We disagree.

Judicial review of orders issued by the Commission is governed by section 105-345.2 of the General Statutes. *In re Appeal of Duke Power Co.*, 82 N.C. App. 492, 499, 347 S.E.2d 54, 59 (1986) (citing *In re McElwee*, 304 N.C. 68, 283 S.E.2d 115 (1981)), *disc. review denied*, 318 N.C. 694, 351 S.E.2d 744 (1987). In pertinent part, subsection (b) of section 105-345.2 provides that this Court may affirm, reverse, declare null and void, remand, or modify the decision of the Commission, where

the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

. . .

(2) In excess of statutory authority or jurisdiction of the Commission[.]

N.C. Gen. Stat. § 105-345.2(b) (1995). In making the above determination, this Court "shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error." N.C. Gen. Stat. § 105-345.2(c) (1995). However, this Court is bound by the Commission's findings if they are supported by competent, material and substantial evidence in view of the entire record submitted. *Brock v. Property Tax Comm.*, 290 N.C. 731, 228 S.E.2d 254 (1976).

The authority of the Commission to entertain appeals from decisions of the County Board of Equalization and Review concerning property assessments is granted by section 105-290 of the General Statutes. *See* N.C. Gen. Stat. § 105-290(a),(b) (1995). Pursuant to this

authority, the Commission shall make findings of fact and conclusions of law based on the evidence offered by both parties and shall "enter an order (incorporating the findings and conclusions) reducing, increasing, or confirming the valuation or valuations appealed[.]" N.C.G.S. § 105-290(b)(3). Thus, the Commission has "general supervisory power over the valuation and taxation of property throughout the State and authority to correct improper assessments." *In re King*, 281 N.C. 533, 540, 189 S.E.2d 158, 162 (1972) (citing N.C. Gen. Stat. § 105-275). Inasmuch as we ascertain no legislative intent to limit the Commission's appellate authority by the restrictions set out in section 105-287(b), we decline to adopt respondent's first argument.

Assuming *arguendo* that the Commission was subject to the provisions of section 105-287(b), no error has occurred. The Commission reduced the 1995 and 1996 appraisals based on its finding that they resulted from an arbitrary and illegal valuation method, which is not excluded under section 105-287(b). "An illegal appraisal method is one which will not result in 'true value' as that term is used in [the Machinery Act.]" *In re Southern Railway*, 313 N.C. 177, 181, 328 S.E.2d 235, 239 (1985); *In re Colonial Pipeline Company*, 318 N.C. 224, 236, 347 S.E.2d 382, 389 (1986). Section 105-317(a) of the General Statutes states:

Whenever any real property is appraised it shall be the duty of the persons making appraisals:

. . .

(2) In determining the true value of a building or other improvement, to consider at least its location; type of construction; age; replacement cost; cost; adaptability for residence, commercial, industrial, or other uses; past income; probable future income; and any other factors that may affect its value.

N.C. Gen. Stat. § 105-317(a) (1997). Thus, a multitude of factors may be considered in determining the "true value" of property.

In the case *sub judice*, petitioners presented evidence showing that the 1992 sale between Gulton Industries and Gai-Tronics was not an arms-length deal, but a buyout by one competitor of another's business. As such, the transaction was heavily influenced by income tax considerations and included the sale of inventory, goodwill, and patents. At trial, respondent's expert conceded that these circumstances would affect the accuracy of the sale price as an indicator of the property's fair market value. Furthermore, petitioners introduced

**IN RE ALLRED**

[128 N.C. App. 604 (1998)]

additional evidence indicating that unlike the 1992 competitor trans-action, the 1993 sale between Gai-Tronics and petitioners was an arms-length deal that more accurately represented the true market value of the property. Still, respondent's assessor relied on the former sale in calculating the 1995 and 1996 appraisal of petitioners' prop-erty. Accordingly, the Commission found, in pertinent part, that:

1. The Randolph County Tax Assessor correctly followed the Schedule of Values, Rules and Standards and did not act arbi-trarily as to the tax assessments for the subject property for the years 1993 and 1994, in that no evidence was presented to the Tax Assessor during those years that the assessments did not reflect the true value of the property.

2. The Tax Assessor was arbitrary in the tax assessments of the subject property for the years 1995 and 1996 for (a) failing to consider the November 1993 sale to the Taxpayers from the previous owner, [and] (b) failing to consider proper compara-ble sales to determine the true value of the subject property[.]

Since the Commission considered the 1993 sale for the purpose of evaluating the correctness of respondent's assessment method, such consideration was proper. We, then, reject respondent's second argument.

[2] Finally, respondent argues that the Commission erred in con-cluding that petitioners brought forth competent, material, and sub-stantial evidence to show that respondent used an arbitrary and ille-gal valuation method in appraising their property. Again, we disagree.

To be sure, it is "a sound and a fundamental principle of law in this State that ad valorem tax assessments are presumed to be cor-rect." *In re Appeal of Amp, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975) (citations omitted). "As a result of this presumption, when such assessments are attacked or challenged, the burden of proof is on the taxpayer to show that the assessment was erroneous." *Id.* at 562, 215 S.E.2d at 762 (citations omitted). Specifically, the taxpayer must produce evidence showing that:

(1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property.

*Id.* at 563, 215 S.E.2d at 762.

As previously addressed, petitioners produced plenary evidence to show that respondent's assessor improperly relied on the 1992 competitor sale and disregarded the 1993 arms-length sale in conducting the 1995 and 1996 tax assessments of petitioners' property. Petitioners, likewise, presented evidence demonstrating that the assessor's use of the replacement cost method in appraising petitioners' property was unconventional and unreliable. In a recent case, this Court provided guidance as to the appropriateness of a particular valuation method under certain circumstances. We stated,

> It is generally accepted that the income approach is the most reliable method in reaching the market value of investment property. The cost approach is better suited for valuing specialty property or newly developed property; when applied to other property, the cost approach receives more criticism than praise. For example, the cost approach's primary use is to establish a ceiling on valuation, rather than actual market value. It seems to be used most often when no other method will yield a realistic value. The modern appraisal practice is to use cost approach as a secondary approach "because cost may not effectively reflect market conditions."

*In re Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 474, 458 S.E.2d 921, 924 (1995), *aff'd*, 342 N.C. 890, 467 S.E.2d 242 (1996). Petitioner Robert Allred testified that he considered the property at issue to be investment property. Further, petitioners' expert testified that "[t]he subject property is the type of real estate more typically purchased by an investor." Thus, in view of the entire record, petitioners sufficiently met their burden of producing competent, material, and substantial evidence to show that respondent's assessor employed an arbitrary and illegal valuation method with regard to the 1995 and 1996 assessments. Moreover, since these assessments exceeded the true value of the property by approximately $388,840.00, petitioners adequately rebutted the presumption of correctness. Again, respondent's argument fails.

For the foregoing reasons, we find no error and affirm the Commission's final order.

Affirm.

Judges GREENE and JOHN concur.