IN THE MATTER OF: THE APPEAL OF BOBBY J. ALLRED, A. LEONARD ALLRED, *ET AL.*, FROM THE DECISION OF THE RANDOLPH COUNTY BOARD OF EQUAL-IZATION AND REVIEW FOR 1995 AND 1996

No. 73PA98

(Filed 8 October 1999)

**1. Taxation— ad valorem—Property Tax Commission—valuation adjustment—statutory limitations**

The State Property Tax Commission, while sitting in its appellate capacity as the State Board of Equalization and Review, is subject to the same limitations set forth in N.C.G.S. §§ 105-286 and 105-287 as apply to county tax assessors, boards and commissioners in adjusting appraised values of real property for ad valorem tax purposes.

**2. Taxation— ad valorem—Property Tax Commission—property valuation—independent appraiser**

The Property Tax Commission's reliance on an independent appraiser's collateral determination of the value of petitioners' property, without challenge or correlation to the county's schedules of values or rules of application, violated the requirement of N.C.G.S. § 105-287 that any permissible increase or decrease in the appraised value of real property be calculated using the schedules and standards established by the county.

1

**IN RE ALLRED**

[351 N.C. 1 (1999)]

### 3. Taxation— ad valorem—valuation adjustment—sale after octennial valuation

The Property Tax Commission erred in its conclusion that a sale of property which occurs subsequent to the octennial valuation of that property for ad valorem taxation is statutorily sufficient to justify a valuation adjustment in a non-octennial or non-horizontal adjustment year.

### 4. Taxation— ad valorem—valuation adjustment—factor not listed in statute

As used in N.C.G.S. § 105-287, the language "a factor other than one listed in subsection (b)" which would allow "an increase or decrease in the value of the property" would include, for example, a rezoning, a relocation of a road or utility, or other such occurrence directly affecting the specific property which falls outside the control of the owner and is subject to analysis and appraisal under the established schedules of values, standards and rules.

Justices MARTIN, WAINWRIGHT and FREEMAN did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 128 N.C. App. 604, 496 S.E.2d 405 (1998), affirming an order entered 15 October 1996 by the Property Tax Commission, sitting as the State Board of Equalization and Review. Heard in the Supreme Court 13 October 1998.

*Keziah, Gates & Samet, L.L.P., by Steven H. Bouldin and Andrew S. Lasine, for petitioner-appellees Bobby Allred, Leonard Allred, Carl Allred, and Evelyn Allred Ward.*

*Gavin, Cox, Pugh and Gavin, by Alan V. Pugh and Richard L. Cox, for respondent-appellant Randolph County.*

*North Carolina Association of County Commissioners, by James B. Blackburn, III, General Counsel, amicus curiae.*

LAKE, Justice.

The issues raised here on review are ones of first impression. The primary issue is whether the State Property Tax Commission (the Commission), while sitting in its appellate capacity as the State Board of Equalization and Review pursuant to N.C.G.S. § 105-290(a),

IN RE ALLRED

[351 N.C. 1 (1999)]

is subject to the same statutory limitations as a county tax assessor (assessor) in adjusting appraised values of real property for ad valorem tax purposes. Secondarily, respondent Randolph County questions whether the sale of property occurring subsequent to that property's octennial tax valuation is a factor which supports the reconsideration and potential adjustment of that property's valuation. For the reasons set forth below, we conclude that the Commission's appellate authority is limited to the same extent as an assessor's and that a post-octennial valuation sale is not a statutorily permissive basis for adjusting a property's tax valuation.

In December of 1992, Gai-Tronics Corporation (Gai-Tronics) purchased an industrial building and tract of land located in Randolph County, North Carolina, from a competitor, Gulton Industries, Inc. (Gulton), for $1,777,000. On 1 January 1993, the Randolph County Tax Department (the County) appraised the real property at $1,825,790, pursuant to the octennial general reappraisal provided for under N.C.G.S. § 105-286. Gai-Tronics did not appeal the appraisal or the associated tax assessment. In November 1993, approximately eleven months after the County's octennial general reappraisal, Bobby J. Allred, A. Leonard Allred, Carl L. Allred and Evelyn Allred Ward (petitioners) purchased the property from Gai-Tronics for $1,200,000. The property received the same appraisal in 1994 as it had in 1993, and the petitioners did not appeal the 1994 tax assessment.

On 1 January 1995, the property valuation was increased $13,050, to $1,838,840, pursuant to N.C.G.S. § 105-287(a). The increase resulted from an addition to the square footage of the building on the property and the correction of a clerical error made in the calculation of the acreage as part of the 1993 valuation. Petitioners appealed the amended appraisal to the Randolph County Board of Equalization and Review (Randolph Board) in 1995 and again in 1996. The Randolph Board denied both appeals based on its findings that the amended valuation did not contain any errors or misapplication of the schedules, standards and rules used in the reappraisal.

In 1995, petitioners appealed the Randolph Board decision to the Commission. Petitioners likewise appealed the 1996 Randolph Board decision and made a formal application for a hearing before the Commission. The Commission consolidated the 1995 and 1996 appeals in an August 1996 hearing.

The Commission heard testimony from petitioners' appraisal expert, who valued the tract in question as of October 1993 at

$1,348,210. The expert's opinion was based on a cost approach, a direct sales approach and an income approach. Petitioners' expert also opined that the 1992 sale of the property from Gulton to their competitor Gai-Tronics may have included assets other than the real property and, therefore, may not have been reflective of the property's "true value" and may have distorted the 1993 octennial valuation. The County's evidence included the testimony of the commercial and industrial appraiser for the County, who testified that he had reviewed the County's valuation using the schedule of values adopted by Randolph County for use in the 1993 octennial valuation, and in his opinion, the value was accurate and calculated consistently with other similar properties in Randolph County.

The Commission determined there was no evidence presented that the County's 1993 and 1994 appraisals were calculated arbitrarily or incorrectly. However, the Commission did conclude that the 1995 and 1996 valuations were arbitrary and in excess of the property's true value and, relying on the expert opinion offered by petitioners, ordered a reduction in valuation of the property to $1,348,210. On appeal, the Court of Appeals affirmed the Commission's revaluation.

Subchapter II of chapter 105 of our General Statutes, the "Machinery Act" (the Act), provides the statutory parameters for the listing and appraisal of property and the assessment and collection of property taxes by counties and municipalities. The paramount purpose of a revaluation for tax purposes is to attain equalization of values, and throughout the Act there are procedures and controls for the timing and calculation of property valuations which help to ensure that equalization. Examples include sections such as 105-284 (establishing uniform assessment standards), 105-286 (establishing scheduled octennial valuations and horizontal valuations based on uniform geographic or category adjustments), 105-287 (limiting valuation adjustments between general valuations) and 105-317 (requiring uniform schedules of values, standards and rules be applied county-wide). The rules outlined in these sections are designed to promote horizontal equity between owners of similar properties, limit discretionary valuation and ensure reliability to the ad valorem tax process which allows taxpayers and counties to plan and budget accordingly.

The Act also provides taxpayers with numerous opportunities to be heard and to have property valuations reviewed throughout the appraisal and assessment process. Section 105-317 requires notice of public hearings regarding proposed schedules, standards and rules to

be used in appraising real property. Section 105-322 requires that taxpayers have an opportunity to be heard at meetings held by county boards to discuss the listing and appraisal of property. Taxpayers may also appeal county board decisions regarding proposed schedules, standards and rules to the Commission under section 105-317 and appeal decisions concerning the listing, appraisal or assessment of property to the Commission under section 105-290.

The Commission's duty to hear and adjudicate appeals applies to "property that has been fraudulently or improperly assessed through error or otherwise" and requires the Commission "to investigate the same, and if error, inequality, or fraud is found to exist, to take such proceedings and to make such orders as to correct the same." *King v. Baldwin*, 276 N.C. 316, 323, 172 S.E.2d 12, 17 (1970). The Commission sits as an appellate body with authority to examine witnesses and documents, conduct investigations, hear and consider evidence, make findings of fact and reach conclusions of law. N.C.G.S. § 105-290(b), (d) (1997). The Commission then enters "an order (incorporating the findings and conclusions) reducing, increasing, or confirming the valuation or valuations appealed or listing or removing from the tax lists the property whose listing has been appealed." N.C.G.S. § 105-290(b)(3). Thus, the Commission has "general supervisory power over the valuation and taxation of property throughout the State and authority to correct improper assessments." *In re King*, 281 N.C. 533, 540, 189 S.E.2d 158, 162 (1972) (citing N.C.G.S. § 105-275).

[1] As evidenced by the above statutory and substantive references, the Commission has clearly been granted the authority to adjust property valuations appropriately raised on appeal. The question raised here on appeal is whether the Commission's authority to adjust property valuations is limited, as the tax assessor's is, by sections 105-286 and 105-287 of the Act.

The administrative authority to establish and adjust property valuations in order to attain and maintain equalization throughout a county is outlined in sections 105-286 and 105-287. Section 105-286 requires each county every eighth year to revalue and assess, as of January first, all real property, at its "true value" in money, for ad valorem tax purposes. The "true value," as defined by section 105-283, is

the price estimated in terms of money at which the property would change hands between a willing and financially able buyer

and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C.G.S. § 105-283 (1997). In determining the true value, it is the duty of the assessor to see that "[u]niform schedules of values, standards, and rules to be used in appraising real property at its true value and at its present-use value are prepared and are sufficiently detailed to enable those making appraisals to adhere to them in appraising real property." N.C.G.S. § 105-317(b)(1) (1997).

Each county is required to review the octennial reappraisal of its properties after four years and to determine whether a "fourth-year horizontal adjustment" is required to bring countywide values into line with then true values. N.C.G.S. § 105-286(b) (1997). In years in which a general reappraisal or horizontal adjustment is not made, adjustments to appraised values are made in accordance with section 105-287. Statutorily permissible adjustments can be made to:

(1) Correct a clerical or mathematical error;

(2) Correct an appraisal error resulting from a misapplication of the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment; or

(3) Recognize an increase or decrease in the value of the property resulting from a factor other than one listed in subsection (b).

N.C.G.S. § 105-287(a) (1995) (amended 1997). Increases or decreases in value which specifically cannot be recognized in years in which there is not a general reappraisal or horizontal adjustment of real property are:

(1) Normal, physical depreciation of improvements;

(2) Inflation, deflation, or other economic changes affecting the county in general; or

(3) Betterments to the property . . . .

N.C.G.S. § 105-287(b). The application of the restrictions imposed by section 105-287 serves to maintain horizontal equity between owners of similar property despite economic changes which may occur in the period between the octennial revaluations required by section

105-286. If an increase or decrease in the appraised value of real property is provided for under section 105-287, it "shall be made in accordance with the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment." N.C.G.S. § 105-287(c).

The importance of sections 105-286 and 105-287, as the cornerstones within which property valuations can be established and adjusted, is evidenced by the following specific statutory admonitions that valuations may not be adjusted on a case-by-case basis unless a change is permissible under those sections: "In years in which real property within a county is not subject to appraisal or reappraisal under [G.S. 105-286] (a) or (b), . . . or under G.S. 105-287, it *shall* be listed at the value assigned when last appraised under [G.S. 105-286] or under G.S. 105-287." N.C.G.S. § 105-286(c) (emphasis added). A county board of equalization and review (county board) has the authority to "[i]ncrease or reduce the appraised value of any property that, in the board's opinion, shall have been listed and appraised at a figure that is below or above the [true value] . . .; however, the board *shall not* change the appraised value of any real property from that at which it was appraised for the preceding year except in accordance with the terms of G.S. 105-286 and 105-287." N.C.G.S. § 105-322(g)(1)(c) (1997) (emphasis added). Likewise, the statute granting the authority of a board of county commissioners (county commissioners) to adjust abstracts and tax records provides that "[n]o appraisal or reappraisal shall be made . . . unless it could have been made by the board of equalization and review had the same facts been brought to the attention of that board [in accordance with G.S. 105-286 and 105-287]." N.C.G.S. § 105-325(a)(6)(b) (1997).

In the case *sub judice*, the Commission concluded the property valuation and adjustment limitations of sections 105-286 and 105-287 apply only to the assessor's authority to determine a property's valuation and are not applicable to the Commission or to county boards. During a colloquy with counsel, the chairman of the Commission stated, "the county assessor may only make adjustments for the reasons listed [in section 105-287] . . . . We are not constrained by the provisions of 105-287 because we are not an assessor. . . . It's not a constraint on the Property Tax Commission or a Board of E[qualization] and R[eview] or even the county commissioners if they sit as a Board of E[qualization] and R[eview]." At another point during the hearing, the chairman repeated his understanding that the county

"Board of Equalization and Review doesn't have the same constraints as the county assessor." Contrary to the Commission's conclusions, these statements are in direct conflict with the statutory language of section 105-322, which provides that "the board *shall not* change the appraised value of any real property from that at which it was appraised for the preceding year except in accordance with the terms of G.S. 105-286 and 105-287." N.C.G.S. § 105-322(g)(1)(c) (emphasis added).

The rationale for constraining the authority of a county board, under section 105-322, and county commissioners, under section 105-325, to the same extent as the assessor is intuitively obvious in light of the objectives of the Act. If the county board or commissioners had authority to make adjustments to property valuations which could not be made by an assessor, not only would the assessor's valuation process become meaningless and taxpayers be encouraged to pursue unconstrained review by the county board or commissioners, but the goals of objectivity and countywide equalization pervasive throughout the Act would be jeopardized by subjective, unrestricted, case-by-case valuation.

In keeping with the objectives behind the consistent application of the property valuation controls in sections 105-286 and 105-287, and recognizing the legislative emphasis placed on the importance of the guidelines in these sections as evidenced by their reference throughout the Act, we do not concur in the conclusion of the Court of Appeals that there was "no legislative intent to limit the Commission's appellate authority by the restrictions set out in section 105-287(b)." *In re Appeal of Allred*, 128 N.C. App. 604, 608, 496 S.E.2d 405, 407 (1998). Nowhere in the Act is there language to suggest that the legislature conferred original jurisdiction upon the Commission to make adjustments to appraisals or assessments of a taxpayer's property in a manner which would circumvent the statutory procedural process at the county level or exceed the strict statutory authority granted to county assessors, county boards and county commissioners. To construe the statutory authority of the Commission, when it sits in an appellate capacity as a board of review, as extending beyond that of the administrative authorities below it would invalidate the integrity of the local system of appraisal and appeals and undermine the efficiency and equalization goals of the Act. We therefore conclude that the Commission's authority to issue an order reducing, increasing or confirming the valuation or valuations appealed, or listing or removing from the tax lists the

**IN RE ALLRED**

[351 N.C. 1 (1999)]

property which has been appealed, is subject to the same statutory parameters as assessors, county boards and county commissioners.

In light of our conclusion above, we review whether the Commission exceeded its authority in adjusting petitioners' property valuation in the case *sub judice.* "The administrative decisions of the Property Tax Commission, whether with respect to the schedule of values or the appraisal of property, are always subject to judicial review after administrative procedures have been exhausted." *Brock v. N.C. Property Tax Comm'n,* 290 N.C. 731, 737, 228 S.E.2d 254, 258 (1976). The controlling judicial review statute for appeals from the Commission is section 105-345.2, which provides in part:

> The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or
>
> (4) Affected by other errors of law; or
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C.G.S. § 105-345.2(b) (1997).

The conclusions of the Commission appealed by the County were based in part on the finding of fact stating that "[t]he Tax Assessor was arbitrary in the tax assessments of the subject property for the years 1995 and 1996 for . . . failing to consider the November 1993 sale to the Taxpayers from the previous owner." As a result of this finding, and relying substantially on the appraisal value determined by petitioners' appraisal expert and the 1993 sale, the Commission ordered the reduction of the petitioners' property's valuation from $1,838,840 to $1,348,210. We hold that the Commission erred both in its conclusion that a sale which occurs subsequent to an octennial valuation is statutorily sufficient to justify a valuation adjust-

ment in a non-octennial or non-horizontal adjustment year and in its reliance upon the independent assessor's determination of the property's valuation.

[2] As to the latter, the administrative authority to establish and adjust property valuations is fundamentally outlined in the previously cited and summarized sections of 105-286 and 105-287. In establishing octennial valuations or horizontal adjustments within a county, the assessor is required to see that "[u]niform schedules of values, standards, and rules to be used in appraising real property at its true value . . . are prepared and are sufficiently detailed to enable those making appraisals to adhere to them in appraising real property." N.C.G.S. § 105-317(b)(1). Additionally, any permissible increase or decrease in the appraised value of real property provided for under section 105-287 "*shall* be made in accordance with the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment." N.C.G.S. § 105-287(c) (emphasis added). Applying these statutory mandates, the Commission's reliance upon an independent appraiser's collateral determination of the petitioners' property value, without challenge or correlation to the County's schedules of value or the application of those schedules to the property, was in violation of the statutory requirement of section 105-287 that any permissible increase or decrease in the appraised value of real property be calculated using the schedules and standards established by the County.

The use of schedules of values and rules of application not only makes the valuation of a substantial number of parcels of property feasible, but also ensures objective and consistent countywide property valuations and corollary equity in property tax liability. The commercial and industrial appraiser for the County, Marcus Frick, testified that the value of petitioners' 1995 appraisal was based on the correct application of the appraisal standards adopted by the Randolph County Commissioners, pursuant to section 105-317, for the 1993 octennial valuation. He also testified that petitioners' property was valued in the same manner as other similar properties in Randolph County and that it was not the County's practice to increase or decrease the County's octennial valuation of a taxpayer's property based on subsequent sales. Mr. Frick's testimony was further supported by the schedules generated by the County's "Computer Assisted Land Pricing Table" (CALP Table). These were submitted during the hearing as "Exhibit F" and substantiated the County's valuation of petitioners' property with detailed calculations

applying factors for components such as construction type, fire resistance, type of space utilization, heating and air conditioning, sprinkler systems, and age of the building.

Petitioners did not present any evidence challenging the accuracy or legality of the schedules, standards and rules published and adopted pursuant to section 105-317 and used by the County in its octennial valuation, and petitioners did not present any evidence of "misapplication of the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment." N.C.G.S. 105-287(a)(2). Petitioners also did not present any evidence of how the 1992 sale between Gulton and Gai-Tronics impacted the property's 1993 octennial valuation. Specifically, petitioners have not taken the position that either the unchallenged 1993 and 1994 valuations or the 1995 and 1996 amended valuations resulted from any failure by the County or its appraiser to provide for a method by which each of the valuation factors designated in subsections 105-317(a)(1) and (2) could be considered and valued through the use of the uniform schedules of values, standards and rules, or that such valuations resulted from any failure to properly apply such schedules so constituted to the subject property. The County had a statutory obligation to use its adopted schedules of values in making any adjustments to the valuation of petitioners' property which were permissible under section 105-287. In keeping with our holding that the Commission's authority to adjust property valuations is limited to the same statutory considerations and restraints as the County, the Commission, acting in its appellate capacity as a board of review, was obligated to do the same.

[3],[4] With regard to the Commission's consideration of a post-octennial valuation sale, the Act provides that "[i]n years in which real property within a county is not subject to appraisal or reappraisal under [G.S. 105-286] (a) or (b), . . . or under G.S. 105-287, it *shall* be listed at the value assigned when last appraised under [G.S. 105-286] or under G.S. 105-287." N.C.G.S. § 105-286(c) (emphasis added). Therefore, unless petitioners' property was subject to an adjustment provided for under section 105-287, their property should have been listed at the value assigned during the 1993 octennial valuation until the next octennial valuation or the four-year countywide horizontal adjustment. As previously stated, adjustments can be made under section 105-287 to correct clerical or mathematical errors; to correct for an appraisal error resulting from a misapplication of the schedules, standards and rules used in the county's

most recent general reappraisal or horizontal adjustment; or to recognize an increase or decrease in the value of the property resulting from a factor other than one listed in subsection (b) of section 105-287, such as depreciation of improvements, inflation, deflation, or other economic changes affecting the county in general. N.C.G.S. § 105-287(a), (b). Considering the language of section 105-287 specifically, and in conjunction with other pertinent and directly related sections of the Act and its overall purpose, we conclude that "a factor other than one listed in subsection (b)," which would allow for "an increase or decrease in the value of the property," would include, for example, a rezoning, a relocation of a road or utility, or other such occurrence directly affecting the specific property, which falls outside the control of the owner and is subject to analysis and appraisal under the established schedules of values, standards and rules.

Petitioners contend, and the Commission concluded, that the County used an "arbitrary or illegal method of valuation by failing to consider the November 1993 sale to the Taxpayers" in determining petitioners' 1995 and 1996 valuations. The Court of Appeals also concluded that the "respondent's assessor improperly . . . disregarded the 1993 arms-length sale in conducting the 1995 and 1996 tax assessments of petitioners' property." *In re Appeal of Allred,* 128 N.C. App. at 610, 496 S.E.2d at 408. These conclusions fail to recognize the significance of an octennial valuation and necessarily presume that taxpayers are entitled to annual revaluation based on individual independent appraisals and current market trends. This presumption would allow for case-by-case valuation and is contradictory to the statutory mandate that "[i]n years in which real property within a county is not subject to appraisal or reappraisal under [G.S. 105-286] (a) or (b), . . . or under G.S. 105-287, it *shall* be listed at the value assigned when last appraised under [G.S. 105-286] or under G.S. 105-287." N.C.G.S. § 105-286(c) (emphasis added). Petitioners were not entitled to a complete "revaluation" of their property in 1995 and 1996. Petitioners' property was valued in January 1993, along with all other properties in Randolph County, and their 1995 and 1996 listings were equivalent to the 1993 valuation of $1,825,790, with the exception of a minor statutorily permissible increase of $13,050. The County was statutorily obligated, in accord with section 105-286(c), to list petitioners' property at the 1993 valuation, plus the adjustment of $13,050, to attain the 1995 and 1996 listing of $1,838,840, and the Commission is not authorized to unilaterally change or disregard the statutorily mandated process.

**IN RE ALLRED**

[351 N.C. 1 (1999)]

Petitioners' attempt to classify post-octennial sales data as a statutorily permissible basis for valuation adjustment under section 105-287 is not only impractical and contrary to the equitable objectives of the Act, but directly impinges upon the statutory requirement that any adjustment made to a general valuation be made "in accordance with the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment." N.C.G.S. § 105-287(c). While a sale of property by its owner *may* reflect the property's value at a given point in time, we conclude that such occurrence is not "a factor" from which an increase or decrease in value results within the meaning of section 105-287(a)(3). A sale is not a cause of change in value resulting from a source independent from the owner which can be processed by correct application of the schedules of values, standards and rules which are in place for uniform application to all taxpayers. The types of increases or decreases the legislature has specifically enumerated as being permitted under section 105-287 are susceptible to and may be made by the correct application of the county's schedules, standards and rules.

As a practical matter, adjustments to a property's valuation each time a sale occurs, which are higher or lower than the property's octennial or horizontal valuation, would cause an unmanageable burden on county resources. Additionally, it would create inequity between those taxpayers who sell between general reappraisals and those who do not, either to the advantage or disadvantage of the seller, depending upon the terms of the sale. This would result in the type of arbitrary treatment specifically intended to be avoided by the Act and would be contrary to the statutory mandate that all property in a county be valued at its true value as of the general reappraisal date. Had the petitioners' property been sold for an amount higher than their octennial valuation, they would have been well within their rights to challenge any attempt by the County to make a related increase in their property's tax valuation. Both the taxpayer and the county receive the protective benefits of the restrictive language of sections 105-286 and 105-287.

The decision by the Commission, affirmed by the Court of Appeals, to assume authority beyond that granted to the County by N.C.G.S. § 105-287, and the conclusion that the County used an arbitrary and illegal method of valuing petitioners' real property by not considering sales data from a post-octennial valuation sale, disrupt the equitable administration and valuation that characterizes North Carolina's system of ad valorem taxation and creates the potential for

manipulation of valuation on a case-by-case basis. We, therefore, reverse the decision of the Court of Appeals and remand to that court for further remand to the Property Tax Commission for its redetermination in a manner consistent with this opinion.

REVERSED AND REMANDED.

Justices MARTIN, WAINWRIGHT and FREEMAN did not participate in the consideration or decision of this case. ·