IN THE MATTER OF: THE APPEAL OF LEON H. & MARY L. CORBETT FROM THE DECISION OF THE PENDER COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING THE VALUATION OF REAL PROPERTY FOR TAX YEAR 1998

No. 363PA00

(Filed 1 February 2002)

**Taxation— ad valorem—real property valuation—split of parent parcel**

A county was required to determine the listing value of two parcels of land resulting from the split of the previously appraised parent tract in accordance with the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment rather than by equitably allocating the predivision tract's tax value between the two parcels, because: (1) a division and conveyance of a portion of a previously appraised tax parcel is a "factor" within the meaning of N.C.G.S. § 105-287(a)(3) which allows the property to be reappraised; (2) factors which allow for an increase or decrease in the appraised value of real property in nongeneral reappraisal or horizontal adjustment years are not limited to occurrences affecting the specific property which fall outside the control of the owner; (3) the only statutorily approved method of valuation referred to

in the Machinery Act is a valuation in accordance with the schedules, standards, and rules used in the county's most recent general appraisal or horizontal adjustment; and (4) there is no reference to or authorization for the use of allocation as a permissible valuation method.

Justice EDMUNDS did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 138 N.C. App. 534, 530 S.E.2d 90 (2000), reversing an order entered by the Property Tax Commission of North Carolina entered on 24 March 1999 and remanding the matter to the Commission for further review. Heard in the Supreme Court 18 April 2001.

*Leon H. Corbett for petitioner-appellees Leon Corbett, pro se, and Mary Corbett.*

*C.B. McLean Jr. for respondent-appellant Pender County.*

LAKE, Chief Justice.

The primary issue raised here on review results from the division of a piece of Pender County real estate into two parcels and questions whether the Pender County Tax Assessor was statutorily required to appraise the individual parcels under the County's schedule of values, standards and rules or whether the assessor should have equitably allocated the original predivision parcel's ad valorem tax value between the two parcels.

The essential facts of this case are undisputed. On 1 January 1995, Leon H. Corbett and his wife, Mary L. Corbett, were the owners of a 1.91-acre tract of residential property, improved with a house, in Pender County. The property bordered on Virginia Creek, which empties into Topsail Sound. Pender County conducted its general reappraisal of real property, pursuant to N.C.G.S. § 105-286, effective 1 January 1995 and assigned a tax value of $196,610 to the property, comprised of $78,619 for the improvements and $117,991 for the land. The tax value was not appealed and remained in effect for the tax years 1996 and 1997.

On 8 December 1997, a general warranty deed was recorded in the Office of the Pender County Register of Deeds, whereby the Corbetts conveyed .69 acres of their land to Edna Brown Wallin, Mrs.

Corbett's sister. As a result of this conveyance, as of 1 January 1998, the Corbetts were owners of record of 1.22 acres of waterfront land, improved with a house, and Ms. Wallin was the owner of record of .69 acres of undeveloped waterfront land.

In 1998, the Pender County assessor gave notice to the Corbetts that the 1998 tax value of their 1.22 acres was $188,718, which was comprised of $78,619 for improvements, an amount unchanged from prior valuations, and a reduced value of $110,099 for the land. The assessor also gave notice to Ms. Wallin that the 1998 tax value of her .69 acres of land was $89,838. Based on these valuations, the additive valuation for both parcels of land was $199,937 versus the prior year's valuation of $117,991, an increase of $81,946.

The Corbetts and Ms. Wallin separately appealed their 1998 property tax valuations to the Pender County Board of Equalization and Review, which affirmed the values assigned. The Corbetts and Ms. Wallin appealed that decision to the North Carolina Property Tax Commission (the Commission), which consolidated the appeals and, after a hearing, separately affirmed the tax values assigned by the Pender County assessor.

Thereafter, the Corbetts and Ms. Wallin separately appealed the decisions of the Commission to the North Carolina Court of Appeals. That court found that the decisions of the Commission were without statutory authority and reversed and remanded the matters to the Commission for an equitable allocation of the 1995 appraised value of the 1.91 acres between the Corbett and Wallin tracts. This Court granted Pender County's petition for discretionary review of both the Corbett and Wallin Court of Appeals' decisions; however, the opinion herein addresses only the questions raised in the petition for discretionary review of *In re Appeal of Corbett*, 138 N.C. App. 534, 530 S.E.2d 90 (2000).

Pursuant to section 105-285 of the Machinery Act, all property subject to ad valorem taxation shall be listed annually. N.C.G.S. § 105-285(a) (1999). Additionally, the ownership of real property for taxation purposes shall be determined as of 1 January, with the exception of limited circumstances which are not applicable to the case at hand. N.C.G.S. § 105-285(d).

In the instant case, in 1998, the Pender County assessor was required to create a new listing for the .69 acres deeded to Ms. Wallin by general warranty deed, which was recorded on 8 December 1997. Additionally, the assessor was required to adjust the listed value of

IN RE APPEAL OF CORBETT

[355 N.C. 181 (2002)]

the Corbett parcel, which had been reduced in acreage by .69 acres. The parties in this case agree that adjusted listings, both in name and value, were necessary.

In order to determine the listing value for each parcel, the assessor applied the appraisal standards, schedules and rules used during the County's last general appraisal in 1995. Petitioners do not challenge the accuracy or legality of the schedules, standards and rules published by the County and do not contend that these schedules, standards and rules were misapplied to their property. Additionally, petitioners agree that valuation through the application of the County's schedules, standards and rules would have been the correct method of valuation had the property (1) been valued as part of a countywide general or horizontal adjustment, provided for by section 105-286; or (2) had the division of their property been a "factor" which required the assessor to increase or decrease the appraised value, pursuant to section 105-287. In fact, petitioners specifically stated on the record that if reappraisal of their property in 1998 was statutorily permissible, they did not object to the valuation reached. Petitioners do contend, however, that the County was not statutorily authorized under section 105-287 to apply the standards, schedules and rules to their property in 1998, and that the 1995 valuation should have been allocated between the two parcels resulting from the split of the parent parcel.

On appeal of the Commission's decision to affirm the County assessor's appraisal, the Court of Appeals held as follows:

> The dispositive issue is whether the increase or decrease in the value of a tract of land formerly valued as one tract, caused by a division of that tract of land into two parts and the conveyance of one of those tracts to another, is a "factor" within the meaning of N.C. Gen. Stat. section 105-287(a)(3), justifying a revaluation of that tract of land.

*Corbett*, 138 N.C. App. at 536, 530 S.E.2d at 91-92. Restated, the question is whether the conveyance of a portion of a previously appraised tax parcel triggers the provisions of sections 105-287(a)(3) and 105-287(c).

Pursuant to section 105-287(c), if an increase or decrease in the appraised value of real property is required under section 105-287, it "*shall* be made in accordance with the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment." N.C.G.S. § 105-287(c) (1999) (emphasis added).

Therefore, if the provisions of section 105-287(a)(3) are triggered, it necessarily follows that the *only* statutorily permissible method of valuation is through the application of the County's schedules, standards and rules.

With regard to the applicability of section 105-287(a)(3), the assessor is given statutory authority to adjust the appraised value of real property under certain circumstances. N.C.G.S. § 105-287(a). Circumstances specifically addressed by the statute include the correction of a clerical, appraisal or mathematical error. N.C.G.S. § 105-287(a)(1), (a)(2). The circumstance relevant to the case at hand, however, is "an increase or decrease in the value of the property resulting from a factor other than one listed in subsection (b)." N.C.G.S. § 105-287(a)(3). Although "factor" is not defined within the chapter addressing property taxation, *The Oxford English Dictionary* defines factor as "a circumstance, fact, or influence which tends to produce a result." *The Oxford English Dictionary* 654 (2d ed. 1989). Therefore, pursuant to section 105-287(a)(3), an assessor is required to increase or decrease the appraised value of real property to "[r]ecognize an increase or decrease in the value of the property resulting from a [circumstance] other than one listed in subsection (b)." N.C.G.S. § 105-287(a)(3). In other words, if a circumstance which causes an increase or decrease in valuation is not specifically excluded from reappraisal as a result of being listed in section 105-287(b), there is statutory authorization, indeed a statutory mandate, for an assessor to reappraise the property to recognize the impact of that circumstance.

Circumstances outlined by section 105-287(b) under which an assessor may not increase or decrease the appraised value of real property include normal, physical depreciation of improvements; inflation; or betterments to property, such as landscaping. N.C.G.S. § 105-287(b). The conveyance of a portion of a previously appraised tax parcel, however, is not listed as a circumstance under which an assessor may not increase or decrease the appraised value of the real property. Therefore, based on basic rules of statutory interpretation, we hold that a division and conveyance of a portion of a previously appraised tax parcel is a "factor" within the meaning of section 105-287(a)(3).

The Court of Appeals' holding in the case at hand relied heavily on an opinion of this Court, *In re Appeal of Allred*, 351 N.C. 1, 519 S.E.2d 52 (1999). In *Allred*, an entire parcel of real estate was transferred between owners, and this Court held that the transfer of an

entire, unchanged parcel was not a factor which triggered revaluation under section 105-287(a)(3). *Id.* at 13, 519 S.E.2d at 59. This Court explained that factors

> which would allow for "an increase or decrease in the value of the property," *would include, for example,* a rezoning, a relocation of a road or utility, or. *other such occurrence* directly affecting the specific property, which falls outside the control of the owner and is subject to analysis and appraisal under the established schedules of values, standards and rules.

*Id.* at 12, 519 S.E.2d at 58 (emphasis added).

In quoting the aforementioned *Allred* language, the Court of Appeals added the word "any" in front of a portion taken from the middle of the quote, thereby changing the language from "other such occurrence" to read that "[a]ny 'occurrence directly affecting the specific property, which falls outside the control of the owner,' and not included within the scope of subsection (b), is properly treated as a subsection (a)(3) 'factor'." *Corbett,* 138 N.C. App. at 536, 530 S.E.2d at 92. From this posture, the Court of Appeals reasoned that

> a county can increase or decrease the appraised value of real property under section 105-287(a)(3) only when . . . there has been an "occurrence directly affecting the specific property, which falls outside the control of the owner," not included within the scope of section 105-287(b).

*Id.* at 537, 530 S.E.2d at 92. Carrying its logic forward, the court held that because

> [t]he division and transfer of the property was . . . within the sole authority of [the] Taxpayers, . . . [i]t follows the division and transfer was *not* a "factor" within the meaning of section 105-287(a)(3) [and] [t]he County, therefore, did not have statutory authority to revalue the 1.91 acre tract . . . as two separate tracts.

*Id.* (footnotes omitted). Recognizing that the County, nevertheless, had to apply some tax value to the Corbett property which, in order to reflect the reduced acreage, was less than the value derived for the 1.91-acre tract, the court reasoned that allocation of the 1995 valuation between the two tracts was appropriate. *Id.* at 537-38, 530 S.E.2d at 92.

The error in the Court of Appeals' reasoning began when it quoted a portion of a sentence of illustrative language of this Court,

placed the broad adjective "any" in front of it and created new law under the guise that it was legal precedent established by *Allred*. The quotation of a portion of a sentence and the exclusion of modifying words such as "would include" and "for example" misstates the law and creates a narrow interpretation which was not intended by this Court. The *examples* given in *Allred* did not comprise an exhaustive list of all occurrences which would fall under section 105-287(a)(3), nor did the illustrative language state or imply that occurrences within the control of a property owner could not be factors which would allow for reappraisal under that section. There is nothing in the language of section 105-287 which makes a distinction between an occurrence within the control of the owner and an occurrence outside the control of the owner. Therefore, as a point of clarification, factors which allow for an increase or decrease in the appraised value of real property in nongeneral reappraisal or horizontal adjustment years are not limited to occurrences affecting the specific property which fall outside the control of the owner.

As to the Court of Appeals' determination that an allocation of the original 1.91 acre's valuation was required between the two resulting parcels, the *only* statutorily approved method of valuation referred to in the Machinery Act, subchapter II of chapter 105 of our General Statutes, is a valuation in accordance with the schedules, standards and rules used in the County's most recent general appraisal or horizontal adjustment. There is no reference to or authorization for the use of allocation as a permissible valuation method. Certainly, the General Assembly was aware that valuations could be apportioned between parcels and would have included such a provision if it had so intended.

In *Allred*, this Court reiterated, in clear and concise language, the importance of the application of a county's schedules, standards and rules which were established and approved for uniform, countywide application in all property tax appraisals. *See Allred*, 351 N.C. at 10, 13, 519 S.E.2d at 57, 59. The restrictions imposed on assessors by section 105-287, regarding the limited permissibility and method of reappraisal between general reappraisal or horizontal adjustment years, "are designed to promote horizontal equity between owners of similar properties, limit discretionary valuation and ensure reliability to the ad valorem tax process." *Id.* at 4, 519 S.E.2d at 54. In the instant case, the application of the schedules, standards and rules used by the County in its 1995 general appraisal established the valuation the Corbetts' 1.22-acre property would have had if it had existed as of 1

IN RE APPEAL OF CORBETT

[355 N.C. 181 (2002)]

January 1995, the year of the County's most recent general reappraisal. In January 1998, as in the beginning of each year, the County assessor was required to separately list and appraise each parcel under Pender County's adopted schedule of values, standards and rules in a manner consistent with the County's appraisals of other similar parcels in order to achieve uniformity in assessments for tax purposes.

Having reached the conclusion that reappraisal of petitioners' 1.22 acres by Pender County was statutorily required, it may be instructive to summarize how the application of the appraisal standards could result in what would appear to be such a disproportionate reduction ($7,892) in the Corbetts' property valuation as related to the increase ($89,838) in the Wallin property valuation.

It is the duty of appraisers "[i]n determining the true value of land, to consider as to each tract, parcel, or lot separately listed at least its advantages and disadvantages as to location; zoning; quality of soil; waterpower; water privileges; . . . [and] adaptability for agricultural, timber-producing, commercial, industrial, or other uses." N.C.G.S. § 105-317(a)(1) (1999). Based on this statutory duty, counties develop rules for the application of schedules of values and standards to be applied to individual properties depending on such variables as zoning, topography, street access, size, whether there is water frontage, and whether the land is a residential buildable lot or residual acreage. Residual acreage, or excess acreage as it is also designated, is the acreage which is in excess of an owner's developed or developable lot and is typically appraised at a lower value than a "homesite" lot and may be valued on a sliding-scale basis, i.e., the more residual acreage, the less its tax appraisal value per acre. The classification of property into these types of categories is consistent with the intent of taxation based on use, reflected by the statutory requirement that all property be valued at its "true value" in money, taking into account "the uses to which the property is adapted and for which it is capable of being used." N.C.G.S. § 105-283 (1999). In Pender County, under its adopted schedules and rules, if an owner owns more than an acre of residential property, the highest and best use of the first acre, or half acre in some cases, is presumed to be for the residential homesite, and the rest of the acreage is presumed to be "excess" or "residual." For obvious reasons, a taxpayer who owns five acres would prefer to be taxed at a higher rate for only one acre, rather than for five.

**IN RE APPEAL OF CORBETT**

[355 N.C. 181 (2002)]

In the instant case, the Corbetts' original 1.91-acre lot was valued as one acre of developed waterfront acreage with .91 acres of excess acreage. The .91 acres was valued at a much lower rate than the one acre of developed waterfront acreage. When the Corbetts transferred the .69-acre parcel to Ms. Wallin, under the County's rules, the Corbetts maintained one acre of developed waterfront acreage and their excess acreage was reduced to .22 acres. Therefore, the reduction in their real property tax liability was a result of a decrease in the size of the least expensive, from a tax perspective, piece of land. On the other hand, because the property was split perpendicular to the waterway, Ms. Wallin's .69-acre tract was valued as a .69-acre tract of developed or developable waterfront acreage, which was valued under the schedules and rules in place at a much higher rate per acre than it had been valued when it was categorized as excess acreage.

The appraisals of the Corbett and Wallin properties were calculated by using the Pender County schedules, standards and rules uniformly used in its most recent general reappraisal, and those standards were never objected to by petitioners. Although petitioners may not find the valuation results palatable, the time to object to the categories used by a county, and the schedules, standards and rules of their application, is prior to the adoption of those schedules, standards and rules. *See* N.C.G.S. § 105-317; N.C.G.S. § 105-322.

In summary, based on statutory mandate, once it is determined that valuation or revaluation of a property is statutorily required, any valuation which is not made in accordance with the schedules, standards and rules used in the County's most recent general reappraisal or horizontal adjustment is in violation of the statutory requirements of section 105-287. The Pender County assessor had a statutory obligation to reappraise the Corbetts' real property in 1998 and to use the County's adopted standards, schedules of values and rules in conducting that reappraisal. We, therefore, reverse the decision of the Court of Appeals.

REVERSED.

Justice EDMUNDS did not participate in the consideration or decision of this case.